IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

NORTHERN DISTRICT, JULY TERM 1841.—CONTINUED.

## Parker *against* Donaldson.

When a purchaser at a store selects the articles he wants, and has them set aside to be sent for by him, or to be sent to him by the merchant, then is the time to make the entry of a charge against the purchaser; and such entry is evidence.

If a factor sell goods in his own name, without the buyer's knowledge of the capacity in which he is acting, the owner may maintain an action for the price of the goods in his own name; and in such case the purchaser may set off a debt due to him by the factor.

If, in such case, the purchaser knew of the capacity in which the seller acted, then, in an action by the principal against him for the price of the goods, he can not set off a debt due to him by the factor.

ERROR to the Common Pleas of *Columbia* county.

Samuel Parker against William Donaldson. This was an action of *assumpsit* for goods sold and delivered; to support which, the plaintiff offered in evidence his book of original entries, after giving the following evidence:

Hugh Smith sworn. I am a clerk of Mr Samuel Parker, of Philadelphia. He is a grocer. I was in his employment in April 1838. This book produced here is the book of original entries of Samuel Parker. This entry, dated April 27th 1838, is my handwriting. It was made on that date. This is the time the goods

II.—2                                                    (9)

[Parker v. Donaldson.]

were bought, not the time they were delivered; they were delivered as soon afterwards as they were called for, not sent by our porter. They were marked, " William Donaldson, Danville, Penna."

Cross-examined—I do not recollect I took this entry from a piece of paper handed to me by Mr Edwards. I do not recollect Edwards bought these goods. I can't say whether the goods were delivered to Edwards & Verree's porter, or not. I did not deliver them. I can't say for certain I saw them delivered. I can't say that I saw them sold. I can't say that William Donaldson bought them. This is the first book the entries are made in. We keep a memorandum book, copied from this, for the men in the store to pack up by. Don't remember whether Mr Parker told me to enter them, or whether I had a memorandum to enter them by. $1.87 is marked for porterage.

Hugh Smith, again. I saw the marks on the articles; they were marked as they got them ready; each article, as we went along packing. They were marked after the entry in the books. As soon as a man comes in, sometimes, he selects goods, and puts his mark on them, and at other times he leaves it to us to select them; after selected, they are weighed and marked with the man's name, and the place where he resides; after they are ready, they remain there until he sends orders where they are to be sent. We charge them when they are sold, after they are selected, and before they are got ready. When he leaves it to us to select, we charge them before we select them, and then get them ready. We can't remember what to pack up without having a memorandum on the book to look at. I did not select these goods, and don't know whether Mr Donaldson selected them, or left them to us to select. I was book-keeper, and not out in the store much at that time. I did not assist in getting the articles ready. This charge is in our usual way of doing business.

Christian Dull sworn. I am a drayman. I know Mr Samuel Parker, grocer of the city of Philadelphia. On the 4th of May 1838, we hauled; my men hauled nine loads of goods, groceries, and dry goods. The groceries from Mr Samuel Parker, the plaintiff, to Bolton & Co.'s transportation house in Willow Street, I delivered or my men delivered them to Mr Williams, the receiving clerk. On the 7th of May, likewise, we hauled another load to the same place, for William Donaldson, of Danville, from Mr Parker's. We hauled another load to the same place on the 9th of May; but I am not sure that was from Mr Parker's. The goods were made up in boxes, kegs, and barrels, all marked for William Donaldson, Danville. I should suppose there were several hundred dollars' worth of goods.

Job B. Kay sworn. There were goods charged to Mr Donaldson which was copied from the book shown to the court into a rough book which I got ready and helped to get ready, and

[Parker v. Donaldson.]

marked William Donaldson, Danville, Pa.  I marked some of the articles, and every article was marked by me and the person who assisted.  They remained there until Edwards's porter called for them, of the firm of Edwards & Verree.  I do not know whether Donaldson ordered these goods or not.  The goods were sent to Bolton's: he kept a forwarding house at the corner of Third and Willow.  Perhaps they remained there two or three days after they were marked.  Christian Dull's men carried the goods from Samuel Parker's to Bolton's.  Dull was the porter of Edwards & Verree.  The rough book from which we packed is at Samuel Parker's store.  Mr Smith copied it.

Hugh Smith sworn.  The orders were in the rough book.  I don't remember that I copied from this book into the rough book.  I believe it is at the store.  Orders were given to pack the goods mentioned in this book.  They were copied into the rough book; that is, all the orders that were given.  I don't remember of making the copy.  If I could see it, I could tell.  Job Kay generally entered the articles into the rough book; but if he was busy, I did it.

Cross-examined—I cannot say I recollect of any person packing these particular goods.

Job B. Kay again.  There were about 15 bags of one kind of coffee.  There were candles, 3 or 4 boxes.

Do you recollect whether or not there were a couple of barrels of crackers?—I don't remember.  I think there was a cask of Lisbon wine.  I do not remember the tea.  There was sugar, but can't state whether one or two hogsheads.  Mr Smith copied it from this book into the rough book, that is the way I know it.  I think there were one or two articles not sent; all the rest were marked for Donaldson, William Donaldson, Danville, Pa.  I don't know what articles were not sent.

Cross-examined—In looking over the articles, I recollected them.  I recollect of their being delivered from seeing it in the book.  It is so long I would not remember.

I remember the fact of the goods being marked William Donaldson, but the particular articles I do not remember.  I recollect the coffee without the book.  I recollect something about the sugar, but don't remember how much, whether one or two hogsheads.  I can't be positive that I saw Mr Donaldson in Mr Parker's store the morning before we commenced packing, but have a faint recollection of seeing him.  I asked some person in the store who this Mr Donaldson was, and he said it was the man who was in the front of the store with Mr Parker.  I think Edwards was with him at the time, William C. Edwards.

Cross-examined—When Mr Donaldson served a subpœna on me, I did not know him at that moment.  I had seen him before.  I remember the sugar and coffee; they were the first articles we got ready.  The coffee was the first article on the book.

[Parker v. Donaldson.]

Plaintiff offered the book of original entries in connexion with the preceding evidence. Defendant objected. Book overruled, and plaintiff excepted.

William C. Edwards sworn. The latter part of April 1838 Mr Donaldson called at the store of Edwards and Verree, and left his order for some groceries, which order I entered in our books of original entries, as we did all other goods we sold. In taking his order, I mentioned we had not the articles, or all of them, he wanted; but what we had not I would get for him, as we had been in the habit of getting before. I told him the advantage we would make, would be in the commission we would make by the sale. We had heretofore not charged the commission. We charged the commission to Parker. After taking Mr Donaldson's order, I took a transcript from our book of original entries, and took it to Mr Parker, and told him I had sold that bill to Mr Donaldson, of Danville, and asked him if he would fill it up : if he would put up that bill of goods for Mr Donaldson. He said yes, and did put it up, I believe. I sent our porter to collect those goods, and some others which Mr Donaldson had purchased : the porters got them, and took them to Bolton & Co.'s warehouse, and returned us the receipts for them, and charged the porterage to us.

A bill was made out by Parker to Mr Donaldson. I saw such a one on our desk : not certain it was delivered to Mr Donaldson : thought at one time, it was; but my present impression is that a bill was made out by Edwards and Verree, and given to Mr Donaldson in place of it. I do not know whether Donaldson went with me to Parker's. Don't think he did. I told Donaldson our assortment was run out, and in all probability we should be obliged to wind up our business unless we were more successful in our collections. I told him I could get them of Mr Parker, or Levering, or some other of our neighbours. I named those two houses, I am sure. Donaldson did not direct me to get the goods from Parker. Parker rented the cellar of our store. His sugars were in there. Some of this was sold to Mr Donaldson. My impression is I told him the sugar did not belong to us. I told him so with respect to the whole bill. I told Mr Donaldson we had not all the articles he wanted, but we could get them, and make a commission by furnishing them to him.

(Book produced.) This is the book of original entries; I entered these articles for Mr Donaldson's order; I did not put them up, nor did I deliver them; I entered them before I got them from Mr Parker. These articles were got from Mr Parker; some of them may have been in our store, my memory is indistinct. The reason my memory is so indistinct is, that I got goods the previous fall from Parker. The whole of this is my hand-writing; the weights and numbers, and the footing up, are not in my handwriting; the rest is mine. The articles Donaldson did not get, are struck out. The other is in the handwriting of my brother,

[Parker v. Donaldson.]

who was our book-keeper; he is in Natchez; he has been some time at the south. I never charged these goods to Donaldson, nor our firm, that I know of; this was never posted into any other of our books. The amounts were made before Donaldson went out of town; I believe Donaldson got a copy of this bill; don't know that amounts were made before, or after, the goods were delivered. At the time of sale, I fixed the price. I did not sell the goods as agent or broker of Mr Parker; I told Donaldson we had not them, but we would get them for him; I bought the goods from Parker for Mr Donaldson; I told Parker the goods were for Donaldson; I did not tell Parker who was to pay him; I think I did not tell him who to charge; we sold them for Mr Parker to Donaldson.

The entry "Pr" was made for our guidance. I think a bill was made out by Parker to Mr Donaldson; I saw such a one on our desk; I am uncertain whether it was ever delivered to Mr Donaldson; I did think at one time that it was; my present impression is that it was not, and that a bill was made out by Edwards & Verree in the place of it. We have a journal to which we carry our charges, when we sold to any person. These goods are not carried into any journal. The amount is $623.10.

Cross-examined—The charge against Mr Parker, of $2.50, is not carried into the journal. 19th of March 1838, sold Mr Parker tea, $1588,29, this not journalized. Sold Jacob Knepler.

I do not think I told Donaldson he was to pay any other person for them. I do not know that I gave Donaldson to understand he was buying from any other person than Edwards & Verree, further than I have stated. I don't know that Donaldson authorized me to buy these goods on his credit. Donaldson had dealt with Edwards & Verree for some years. The firm of Edwards & Verree were indebted to Donaldson when these goods were bought. I don't know whether we were indebted to him more than the amount of these goods; there was unsettled accounts between us. He had lent us his notes exceeding $2000; he paid these notes. The firm of Edwards & Verree have been indebted to him ever since. (Bill shown.) I saw this bill when Mr Donaldson was in Philadelphia last; within the last two months. Parker's store was next door but one to ours. The porterage was charged to Edwards & Verree.

Question—In your previous dealings with Mr Donaldson, if Mr Donaldson gave orders for goods which you had not, were you in the habit of getting those articles and charging them to Donaldson?

Plaintiff objected to the question. Objection overruled and exception.

Answer—We got them and charged them to Donaldson. In our previous dealings we paid for them ourselves and charged them to Donaldson, as we did with others.

[Parker v. Donaldson.]

Mr Edwards continued. Mr Parker made out an account as follows: Mr William Donaldson, to Samuel Parker, Dr., to merchandise as per bill rendered, $623.10. An order was attached to that account which read, Mr William Donaldson please pay to Mr Samuel Parker or order, (don't know whether it said the amount of the above account, or the sum of $623.10), as the goods were purchased of him. This was signed Edwards & Verree. I gave that draft to Mr Parker. It was made out by Mr Parker or one of his clerks. The draft was dated between the 20th and 30th of June 1838. Our firm was dissolved in July 1838.

When I got goods before from Mr Parker for Mr Donaldson, I took Mr Donaldson's note before he left town and gave it to Mr Parker. I took no note for this. I wrote the letter of 3d of July 1838, in answer to one Donaldson wrote to me, to get time from Parker. The order I signed was prior to this letter. I cannot tell how long after Donaldson left the city that I wrote to him. Don't know whether I wrote to him before I received a letter from him. Don't know whether the letter of the 3d of July 1838, was the first after the goods were sold.

This book of Edwards & Verree contains the sales of goods of various persons; some of our own sales. It contains credits and moneys received for these sales. It is mostly the goods of other people, and not the property of Edwards & Verree. I think nothing on this book was journalized. We sold very little of our own property at that time; it was other people's property. We sold them for a commission. We had authority from Jacob Levering to sell a lot of his goods in our store. We had authority to sell goods of his that were in our store. There were sugars in the store in the cellar which Parker rented. We were embarrassed at the time, and we sold for a commission; and we could not purchase goods on our own credit. We had not an assortment of groceries 27th of April 1838. We had some articles; think we had sugar and coffee; some considerable amount of coffee. We had not entirely ceased keeping an assortment as far as we were able, and where we could not fill a man's bill we went out and got them. We hoped to get through. We had some few articles in March 1838, as far as we could buy on our own credit.

The teas we sold to Parker, before referred to, were the property of Bolton & Pilling. They were settled shortly afterwards by Parker's note to Bolton & Pilling. Our commission was 2½ per cent. Mr Donaldson was not informed of the amount of our commission. I informed Mr Donaldson that the articles we had not we would get for him and charge him the market price only, and no profit, and that the only advantage we would get would be the commission on the sale to him. We had accepted Donaldson's drafts frequently for money. We have not settled our accounts. There is generally an allowance of 2½ per cent. for acceptances, where the acceptor is not supplied with funds. Some-

[Parker v. Donaldson.]

times we accepted without funds, and sometimes we had funds. I don't know who I was subpœnaed by. We have not made the charge of $2\frac{1}{2}$ per cent. for acceptances in this case. We have not released him from the charge.

Question by the Court—We never communicated to Donaldson that we intended to charge him for these acceptances, and did not intend, at the time, to charge him for them.

Question—If you are allowed $2\frac{1}{2}$ per cent. for acceptances, would you be in debt to Donaldson?

Question overruled. The court are of opinion that the charge cannot now be made. Plaintiff excepted.

Donaldson loaned us his notes, which he paid at maturity. Some notes were paid before the goods were delivered, and some since. One note of $1200 was paid before the goods were got. Two notes of $2100 were paid since. I suppose we are indebted to Donaldson $2000.

Cross-examined.—Donaldson sent a draft of $375, that we were indebted to him for; note of 31st of March 1838; this note was sent to renew a note of October 4th 1837; Edwards & Verree got the proceeds; we transferred the note to William Oliver; this is his endorsement; I know his hand-writing; I never informed Donaldson the two former notes were given to Parker; they were given in payment of bills of goods sold to Donaldson; one dated October 4th 1837, $500; October 15th 1837, $600. Donaldson never agreed with me to pay Mr Parker; I don't know that he ever authorized me to make an arrangement about that bill; I believe Donaldson was unwilling to settle the two notes of October 1837, unless the March note, or October note, was given up; I gave Mr Donaldson no notice where his note was; I don't think he knew where his notes were when he sent the third note for renewal.

Admitted that Donaldson paid the two notes of October 1837.

The two notes that Parker got, were not for the exact amount of the goods Donaldson got at that time; nor for the exact amount of the goods we got from Parker at that time, and sold to Donaldson; Donaldson had not notice that we got any of these goods from Parker.

Defendant asked witness, whether bill shown, dated September 21st 1837, is not the bill of goods for which the notes were given in part payment?

Plaintiff objected. Paper admitted to show how they had been in the habit of dealing. Exception by plaintiff.

$982 of this bill was got from Parker; the balance was our own; we got no commission from Parker for selling them; we gave the notes to Parker in twenty days after the sale to Donaldson; we gave them for the $982, and the balance to be credited to us on account: 21st of September the bill was sold to Donaldson; 4th of October received Donaldson's notes; 12th of October

passed them to Samuel Parker. These bills are charged to Mr Donaldson in our journal, and carried to our ledger, and the notes are credited.

Plaintiff offered Parker's book of original entries again, for the purpose of showing that Donaldson was charged, and not Edwards & Verree, at the time of sale.

Defendant objected. By the court.—It is not evidence of sale and delivery, because the entries were made before delivery. It is not evidence to prove a contract between the parties, because not made in the presence of the other contracting party, either Donaldson, or Edwards & Verree. It is not evidence, or part of the *res gesta*, because not made at the time of delivering the goods.

The court overruled the book of entries. Plaintiff excepted.

Defendant offered a letter from William Donaldson to William C. Edwards, dated July 11th 1838, being proved by William C. Edwards to be the answer he received to his letter of the 3d of July 1838, given in evidence by plaintiff.

Plaintiff objected to said letter being read. Objection overruled, and plaintiff excepted.

Defendant offered to read the notes dated October 4th 1837.

Plaintiff required defendant to state for what purpose they were offered.

The note of 31st of March 1838, offered to prove indebtedness of Edwards & Verree, to the amount of $350 to Donaldson, as spoken of by Edwards in his evidence.

Court permitted the notes of the 4th and 15th of October to be read, as proved by William C. Edwards, and in explanation of his evidence.

Plaintiff objected to notes being read. Objection overruled and exception.

Endorsement of Parker admitted by plaintiff.

15th of October 1837, note, William Donaldson to Edwards & Verree, or order, $600, at six months; endorsed Edwards & Verree. Samuel Parker.

4th of October 1837, note, same to same, $500, at six months; endorsed as above.

31st of March 1838, note at ninety days, William Donaldson to Edwards & Verree, or order, $500; endorsed Edwards & Verree, and William Oliver.

James Verree sworn. I was in the counting-room at the time in which Edwards wrote down the order for the goods; Mr Donaldson gave the order; I did not hear them say any thing in reference to it whatever; I gave a bill of the goods to Donaldson; it was two or three days after this transaction took place; I delivered it to him personally: (bill shown) this is the bill, dated April 27th 1838; it is in my hand-writing; I gave him no other bill; I don't know that any other person gave him a bill; all I

know is, that Donaldson gave orders, and I saw Edwards write down what is in that book; I don't think the goods were charged anywhere, except in the book that is in evidence.

Cross-examined.—(Book shown.) This is the entry; I don't know certainly where the goods came from; don't know that we had them in the store; I wrote " ac. Pr.," in pencil; this means they were Parker's goods; I wrote this when I made out an account of sales of Parker's goods, a week or ten days after the date, the 27th. 27th of April 1838. (Bill read by defendant.) I recollect of seeing a bill in our counting-house from Parker, I presume of these goods, though I can't say certain; that bill stated the goods bought by Donaldson of Parker; don't know what became of that bill; can't say I have seen it since or not; have not to my knowledge; I saw it about the time of the transaction, or after; don't know whether it was before I made out the bill which I gave to Donaldson; don't know that Donaldson got these goods, except that our porter went after them; Donaldson never said he did not get them; I did not know when the entry was made in the book, that the goods would be obtained; I believe I made the bill from the book; I did not fill the entries in the book; I can't say I knew the goods had been obtained, when I made out the bill; I presumed they were. The weights and amounts were entered by Marshal Edwards, our clerk; I don't know what they were made from; don't know that there was anything in the store from which the weights and amounts could be made out, but the bill of Mr Parker. When we made sales of our own goods on credit, we carried them to the journal, and from that to the ledger. This book, from March 15th to June 1st 1838, contains mainly the sales of other people's property. I think we charged Parker 2 or $2\frac{1}{2}$ per cent.; think we charged $2\frac{1}{2}$ per cent. in the account sales. We made an assignment June 29th 1838, and I do not see that we made any sales after June 9th.

In chief.—I believe there are some sales of our own goods in this book; don't think any of them were journalized; I did not inform Donaldson these goods were got of Parker; I never heard any one say so to him.

Cross-examined.—I don't know the articles we sold for ourselves that are in this book, were paid for or settled at the time; don't know whether they were, or were not, paid, or settled for at the time.

Edwards & Verree's book in evidence, to show sales on commission.

The court were requested to instruct the jury:

1st. If the jury believe the goods in question were the property of Samuel Parker, and were sold by Edwards for Parker, to Donaldson, and Donaldson was informed by Edwards before the sale, " *That they had not these articles, but could get them, and would have a commission by furnishing them to him,*" then Don-

II. — 3　　　　B *

aldson is a purchaser with notice that Edwards & Verree were not owners, but agents or brokers for others.

2d. That if Donaldson was a purchaser with notice of the agency of Edwards & Verree, as stated in first point, he is liable to the owner, whether the owner's name was disclosed or not at the time of his purchase, and not having paid the agent before the real owner was made known to him, he still remains liable.

3d. That Donaldson having purchased with express notice that Edwards & Verree were not owners, but that they would make a commission by furnishing the goods to him, cannot set up an indebtedness to him by Edwards & Verree, on their running unsettled accounts, to defeat the plaintiff.

4th. That the proof of indebtedness of Edwards & Verree to defendant in this case, is not sufficient to entitle him to a set-off.

The *first point* of plaintiff's counsel being read, the court state that the remark of William C. Edwards here referred to, is an isolated observation taken from his testimony, and not the whole of what he said relative to the question. The use of the word "commission," as stated, would certainly favour the idea that Donaldson is a purchaser with notice that Edwards & Verree were not owners, but agents or brokers for others. But it is not conclusive; and there are other circumstances which might favour the opposite view. The jury should take into consideration the whole evidence: the words, "*that they had not the articles, but would get them*," might mean that they would purchase them on their own credit, or with their own money; and the remark that they would "furnish" them to defendant, might mean that they would sell them to him on their own account; and if the whole evidence induces the jury to find that they were so intended and understood by the parties, the jury have a right to say so. Among the circumstances tending to produce this impression, are the contract by Edwards & Verree to furnish the articles at prices agreed upon, and charged in their book to Mr Donaldson in his presence, before Parker, the plaintiff, was spoken to on the subject; the statement of Mr Edwards at the time, that what articles they had not they would get for him, as they had been in the habit of doing before; the proof that in such cases they had been in the habit of purchasing such articles as they had not in their own assortment, paying for the same and selling them on their own account to Donaldson; the fact that the goods were delivered by Mr Parker to the porter of Edwards & Verree, and were by him delivered to the forwarding-house, charging the porterage to Edwards & Verree; the evidence that, about the time the goods were so delivered, Messrs Edwards & Verree delivered to Mr Donaldson a bill of the goods, and charging them to him on their own account, without taking any notice of the interest or right of Parker. Under these circumstances, the court refuse to say, as matter of law, that "Donaldson is a purchaser with

notice that Edwards & Verree were not owners, but agents or brokers for others." That question is left as a fact for the decision of the jury.

If the jury find that fact in favour of the plaintiff, then the plaintiff's second and third points are correct, and not otherwise.

The court refuse to give the instruction requested in the fourth point, and leave it as a fact for the jury to decide whether Edwards & Verree were indebted to Donaldson at the time of the purchase; and how much, if any. If Edwards & Verree sold the goods in their own name, without notice that they belonged to another; and if Donaldson purchased them with an understanding that Edwards & Verree were the owners by purchase on their own credit or otherwise, then Donaldson may set-off any demand against Edwards & Verree which existed at the time of the purchase, and not otherwise.

This charge was excepted to by plaintiff.

*Greenough*, for plaintiff in error, on the point as to the admission of the books in evidence, cited 16 *Serg. & Rawle* 133; 4 *Rawle* 404; 12 *Pick.* 313; 12 *Law Lib.* 15.

*Comly*, for defendant in error, on the same point, cited 10 *Watts* 249; 4 *Watts* 258; 5 *Serg. & Rawle* 28.

The opinion of the Court was delivered by

ROGERS, J.—A book of original entries, supported by the oath of the party, is *primâ facie* evidence of the sale, and delivery of the articles sold to the person charged. But where it certainly appears that at the time the entries were made the contract of sale was not complete, but that the goods were charged under a confident expectation that the contract would be completed by an actual delivery, the book is not competent evidence. The entry must be made at the delivery of the goods, or immediately after; *Curren* v. *Crawford*, (4 *Serg. & Rawle* 3). Thus, if a tradesman order goods to be sent by a carrier, it will not operate as a delivery until the goods are delivered to the carrier, or agent of the purchaser, although the moment they are delivered to him the property is changed. *Dutton* v. *Solomonson*, (3 *Bos. & Pull.* 582.) By a delivery to the agent of the vendee, the property is changed, and the vendor is entitled to the price of the goods. And this explains the case of *Rhoads* v. *Gaul*, (4 *Rawle* 407). There the charges were made in anticipation of a delivery to the agent of the vendee, and of course before the property in the goods was changed. The proper time for making the entry is at or about the time when there is a transmutation of property from the vendor to the vendee. A sale is defined to be a transmutation of property from one man to another, in consideration of some price or recompense

in value.  A delivery is an inseparable incident to all sales, but even in the construction of the seventeenth section of the Statute of Frauds in England, which is not in force in Pennsylvania, the delivery, to make the contract binding, may be either actual or constructive; of this many instances are given in *Ross on Vendors* 65, and the authorities there cited.  The only inquiry on the point of the admissibility of the book is, whether at or about the time the entries were made, there was such evidence of delivery as would authorize the court to admit it in evidence; or, rather, were such facts disclosed as destroyed the right of the plaintiff to have the book submitted to the jury as *primâ facie* evidence of the sale and delivery of the goods to the defendant.  The ordinary proof of the entries was made by the clerk of the plaintiff.  That the goods were sold by the plaintiff, and that they went into the possession of the defendant, does not admit of doubt.  There is reason to believe that Edwards acted in the purchase as the agent of the defendant, and that the defendant knew that the goods were the property of the plaintiff.  They were selected, (but by whom does not certainly appear, although the probability is by Edwards himself,) packed, and marked in the name of the defendant, with his address, were delivered to a porter employed by Edwards, who delivered them at the warehouse of a transportation company in Philadelphia, by whom they were in the regular course of business forwarded to the defendant.

The Court of Common Pleas seem to take it for granted, that the entries were made before the delivery of the goods, and that consequently it fell within the principle ruled in *Rhoads* v. *Gaul.* But this is not the fair result of the evidence.  On the contrary, there is reason to believe the goods were selected by Donaldson himself, (who, as one of the witnesses is under the impression, was in the store,) or, what is the same thing, by his agent; they were set apart and marked by his directions, or with his assent. If this be so, the property in the goods was then changed, and consequently that was the proper time to make the entry; for when the name of the vendee is written by his directions, or by the directions of his agent on the article sold, or goods are made up to be delivered, or are otherwise separated from a larger quantity, of which they formed a part, with a view to delivery, or where the vendee, by the consent of the vendor, deals with the property as his own, it has been construed to be evidence of a delivery, so as to enable the vendor to maintain an action of *indebitatus assumpsit* for goods sold and delivered.  *Chaplin* v. *Rogers*, (1 *East.* 194); *Mason* v. *Lickbarrow*, (1 *Hen. Blac.* 363); *Hodgson* v. *Le Bret*, (1 *Camp.* 233); *Hurry* v. *Mangles*, (1 *Camp.* 452); *Elmore* v. *Stone*, (1 *Taunt.* 457.)

A man buying a hat, selects the article which suits him; it is put aside, but for some reason it is inconvenient for him to take it with him.  He is to send for it, or the vendor is to send it to his

[Parker v. Donaldson.]

lodgings. From that moment there is a change of property; the bargain is complete, and the vendee becomes the owner. Then is the time to charge the article, if not paid for. There is no necessity to wait for that purpose, until it is actually delivered to the servant of the purchaser, or until it is delivered by the servant of the vendor to the vendee. The law has been always so understood, and any other rule would be attended with great inconvenience, and with an increased risk to the purchaser. It does not interfere with the rule of *Rhoads* v. *Gaul*, which prohibits entries in anticipation of a delivery.

But the difficulty is, who was the debtor, or in other words, to whom were the goods sold? To Edwards & Verree, or to the defendant? That the plaintiff has a right to look to one or the other, must be conceded. If the defendant, either by himself or his agent, purchased the goods, there is an end of the case, because, in that event, it cannot be pretended that the defendant can set-off any claim which he may have against Edwards & Verree. And it is equally clear, that if the plaintiff sold the goods to Edwards & Verree, who sold them to Donaldson, the action cannot be sustained. But granting that Edwards & Verree did not act as the agents of Donaldson, but as the factors of Parker, it will be necessary to consider the cause in another aspect, and to inquire whether the defendant can set-off his claim (if he has one) against Edwards & Verree in this action. It is generally true that a factor's sale creates a contract between the owner and the buyer. If, therefore, a factor sells goods in his own name, without any reference to the principal, or without the buyer's knowledge that he was acting for another, a contract is created between the buyer and owner on which a suit may be brought. But notwithstanding the principal may maintain an action against him for the price of the goods, still the purchaser not knowing of any principal, may set-off a debt due from the factor, against the price of the goods. But where the purchaser, at the time of the contract, knew that the seller was not the owner of the goods, but a factor, the right of set-off against the factor does not exist, whether the suit be brought in the name of the principal, or by the factor in his own name. Nay more, when, before all the goods are delivered, and before any part of them is paid for, the purchaser is informed they belong to a third person, he cannot set-off a debt due from the factor, in an action by the principal. *Scrimshire* v. *Alderton*, (2 *Stra.* 1183); *Drinkwater* v. *Goodwin*, (*Cowp.* 252); *Atkyn* v. *Amber*, (2 *Esp.* 493); 1 *Camp.* 444, 109, 180.

It is not necessary to give any opinion how the case would stand, if it appeared that both plaintiff and defendant were deceived by Edwards & Verree. Of the application of these principles to the facts, the jury must judge. But if the testimony is entitled to credit, it is difficult to believe that Donaldson was

[Parker v. Donaldson.]

ignorant that the goods sold belonged to the plaintiff, and that Edwards & Verree were but his factors. If that be so, no right of set-off can exist.

Judgment reversed, and a *venire de novo* awarded.