## J. R. MORRIS v. J. S. & W. H. SELLERS.

FACTOR—PURCHASER.—Ordinarily, the possession of cotton by a cotton factor, who is a factor only, not engaged in buying and selling on his own account, raises a presumption that the cotton does not belong to him, but is held on commission for another; but this presumption may be rebutted by the real-owner permitting his ownership to be concealed, and the property to be so acquired, managed, and possessed, by the factor, as to indicate to third persons that the factor is the real owner. Under such circumstances, the factor, so held out as the real owner, may sell the property, in discharge of his previous debt, to one who had no notice, actual or constructive, of the defects in his title, and the sale will be valid.

ERROR from Galveston. Tried below before the Hon. A. P. McCormick.

Peel & Dumble, a firm of factors and commission merchants, were doing business in the city of Galveston, and the defendants in error were also factors and commission merchants, doing business in the same place. Peel & Dumble, on the 19th of September, 1865, shipped Sellers & Sellers forty-one bales of cotton, of certain marks, and on the 30th of September, 1865, shipped them nine more bales of cotton, to be sold for their account. Sellers & Sellers advanced, per contract, $75 per bale, to Peel & Dumble, on the day of their shipment. The cotton was to be sent to New York, and there sold for account of Peel & Dumble. The cotton was lost at sea, and Sellers & Sellers collected the insurance, $200 per bale, and applied the proceeds to the indebtedness of the said Peel & Dumble to W. H. Sellers, (to whom they were

largely indebted,) according to an agreement made between Sellers & Sellers and Mr. Dumble.

On 1st December, 1866, J. R. Morris filed his petition in the District Court of Galveston county, alleging that he shipped Sellers & Sellers said cotton, and that they had never accounted to him for the proceeds, and prayed judgment for $13,500.

It was in proof, on the trial in the court below, that the cotton was turned over to Sellers & Sellers by J. A. H. Cleveland, (who was the business manager of the firm of Peel & Dumble, and had entire control and management of their business in Galveston,) as the cotton of Peel & Dumble; that, under instructions from Dumble, he saw John Sellers, in Galveston, and obtained an advance of $75, gold, per bale for forty-one bales, the first lot, and turned over the cotton; the same thing was subsequently done with the second lot of nine bales, and the same amount advanced.

Cleveland testified, that he thought, at the time, the cotton belonged to Peel & Dumble, and that he was subsequently told by Dumble that the eighteen bales, marked H, were bought by D. McClower & Co. for Peel & Dumble.

W. H. Sellers testified that Peel & Dumble were largely indebted to him; that he was pushing them for payment; that they agreed to ship J. S. Sellers & Co. cotton, if they would give him liberal advances, and that the balance might be retained by them, and applied on their indebtedness to W. H. Sellers; that there was an express agreement to this effect on all cotton shipped them by Peel & Dumble—(on this point the testimony was conflicting.) He also testified that this large advance of seventy-five dollars per bale was agreed to be advanced in view of their previous agreement.

John Sellers testified that this large advance was made to induce the shipment of cotton, that W. H. Sellers might get his money due from Peel & Dumble.

It was claimed by Morris, over a year after the transaction had passed, that the cotton was his; that he shipped it to

Peel & Dumble, to be sold for his account, and that defendant should account to him for the proceeds of the cotton. To prove this, he introduced the evidence of Mr. Dumble, who testified that he was one of the firm of Peel & Dumble; that plaintiff advanced him four thousand dollars to buy cotton with, and that with the money he purchased this and other cotton, and that the transaction was entirely an individual transaction between him and Morris; that no books other than a private memorandum book were ever kept between him and Morris, and that as to this transaction, the name of Morris did not appear on the books of Peel & Dumble at all, either at Houston or at Galveston, at both of which places Peel & Dumble did business. The evidence showed that Morris never regarded defendants as having anything to do with him in this transaction, but that his business dealings were with James F. Dumble and not with Peel & Dumble, although he authorized them to ship one lot to Peel & Dumble, at Galveston, to be sold for his account; but his whole transactions were those of friendship for Dumble; he borrowed the money and hypothecated his real estate to accommodate him. He never had the name of Peel & Dumble on his books, and only kept a memorandum book between himself and Dumble.

There was a verdict and judgment for Sellers & Sellers.

No brief for plaintiffs in error has reached reporters.

*Flournoy & Sherwood,* for defendants in error.

ROBERTS, CHIEF JUSTICE.—To maintain this suit, it was incumbent on J. R. Morris to allege and prove that the fifty bales of cotton in controversy was his property at the time that Peel & Dumble let J. S. Sellers & Co. have them. If the jury were satisfied of that fact, the next question was, were they satisfied from the evidence that Peel & Dumble, upon receiving an advance of seventy-five dollars, in gold, per bale, placed the said fifty bales of cotton in the

hands of J. S. Sellers & Co., at Galveston, to be by them shipped to New York, under an agreement that the proceeds of the sale thereof should be appropriated by them to the payment of a previous debt, due from Peel & Dumble to W. H. Sellers, who was one of the firm of J. S. Sellers & Co.?

The evidence on this issue was conflicting, and the jury, from their verdict for defendants, must have found in the affirmative.

The remaining question was, did Peel & Dumble have the possession and apparent ownership of said cotton in Galveston, by the permission of Morris, under such circumstances as that J. S. Sellers & Co. could legally contract for the same with Peel & Dumble as their own property, in discharge of a previous debt due to W. H. Sellers from Peel & Dumble.

Upon this issue, the court charged the jury, that "If you believe from the evidence that the cotton in question was the cotton of plaintiff, and you should further believe from the evidence that the plaintiff so placed said cotton in the hands of Peel & Dumble, as to conceal the fact of his being the owner, and to hold out said Peel & Dumble as the real owners, then, as to third persons without notice, or to defendants here, Peel & Dumble's contracts, in reference to said cotton, would be as binding on the plaintiff as on themselves."

The facts to which this charge applied were, that Peel & Dumble were factors and commission merchants, having one house in Houston, and one in Galveston, and so was J. S. Sellers & Co., in Galveston; that as an act of friendship to James F. Dumble, of the firm of Peel & Dumble, the plaintiff Morris, during the summer and fall of 1865, advanced to James F. Dumble four thousand dollars, with part of which he bought the fifty bales of cotton for the plaintiff, who directed him that he might ship it to whom he pleased, and account to him for the proceeds when the cotton was sold, in pursuance of which the cotton was sent to the house

of Peel & Dumble, with request made to their manager, at Galveston, by James F. Dumble to ascertain what advance J. S. Sellers & Co. would make on the cotton, which resulted in the cotton being turned over to them to be shipped for and on account of Peel & Dumble. It was shown that Morris was not known in the purchase of the cotton, nor in the transmission of it to the Galveston house of Peel & Dumble, where it was received from their house at Houston, as the cotton in the name of and for account of Peel & Dumble. Morris's name is not found in connection with this cotton in the books of either house of Peel & Dumble, or with any of the papers pertaining to it. The whole transaction was kept in a private memorandum-book of James F. Dumble, and Morris had no personal knowledge of this lot of cotton.

Upon these, and other facts tending in the same direction, the jury must have concluded that Morris permitted this cotton to be so managed by Peel & Dumble as to make them the ostensible owners of it, notwithstanding the contrary presumption arising from their capacity of factors and commission merchants. There was sufficient evidence to authorize them in coming to that conclusion, there being no evidence whatever that J. S. Sellers & Co. had any notice that the cotton was not the property of Peel & Dumble, or had any means of ascertaining the contrary, a fact not known, or even suspected, by Mr. Cleaveland, manager and book-keeper of Peel & Dumble, who alone handled the cotton at Galveston for them. In reference to the facts in evidence, we are of opinion that the charge of the court was correct.

The possession of cotton by a cotton factor, who is a factor only, not engaged in buying and selling on his own account, would not raise the presumption of ownership, so as to authorize others, who knew him to be only a factor, to deal with him in all respects as the owner. (Story on Agency, sec. 113.) The presumption would rather be, in such case, that he was in possession of it, on commission, for some other owner. It is well settled, however, that such presumption

may be rebutted, by the real owner permitting his ownership
to be concealed, and the property to be so acquired, managed,
and possessed as to indicate to third persons that the factor
is the ostensible and real owner of the property; and such
ostensible owner, so held out as the real owner, may sell the
property, in discharge of his previous debt, to one who has
no notice, actual or constructive, of the defect of his title to
it, and the sale will be held valid.

Without discussing the principles involved in these rules
of law, it will be sufficient to refer to some of the authorities
which sustain them: Story on Agency, sec. 390; 2 Kent's
Comm., 632; 2 Smith's Lead. Cases, pp. 160–162, and notes;
7 Term Rep., 359; Parker v. Donaldson, 2 Watts & Serg., 21;
Hogan v. Shorb, 24 Wend., 461, 462; Mitchell v. Bristol, 10
Wend., 493; Hutchinson v. Bours, 6 Cal., 385; L. R. Bank
v. Plimpton, 17 Pick., 159.

The judgment is affirmed.

AFFIRMED.