## MILBURN MANUFACTURING CO. V. FLORENCE PEAK.

### No. 379.—Decided February 10, 1896.

1. **Owner and Factor—Agency.**

   A factor is one to whom goods are sent on sale or commission. The relationship between him and the consignor is that of agent and principal, the general property in the goods remaining in the consignor. If the factor undertakes to guarantee the payment of the debts arising through his agency he is said to sell on a del credere commission. Such guaranty is not inconsistent with his being a factor. See contract to which these principles are applied and held to be a consignment and not a sale. (P. 211.)

2. **Statutory Construction—Mortgage.**

   A sale of personal property on credit, in which possession is delivered to the buyer, when the vendor retains ownership and the right to resume possession on default of payment, is a mortgage, and the purchaser becomes a mortgagor. Harling v. Creech, 88 Texas, 300. (Pp. 211, 212.)

QUESTION CERTIFIED by Court of Civil Appeals for Second District, in an appeal from Tarrant County.

The facts in litigation are given by the appellee as follows: "Hood & Co. were indebted to appellee for rent in the sum of $170 for the storehouse in which the buggies involved were stored, and in payment of same sold to appellee for the sum of $210 the vehicle in question, of which forty dollars was paid in cash and the balance by credit upon the account. Afterward the Milburn Mfg. Co. sued Mrs. Peak (appellee) for conversion of the buggy, claiming under the contract in question (see opinion) to be the owner of same and offering to pay back to her the amount she paid in cash, but not alleging that she bought with notice of the contract between Hood & Co. and the Milburn Mfg. Co., or that the contract was recorded. Upon general demurrer the court held that the contract was an instrument such as is required to be recorded under

the registration act (19th Leg., p. 76) and sustained the demurrer to the petition." The contract is stated in the opinion, as is the question submitted as to its construction.

*W. T. Essex* and *R. Y. Prigmore,* for appellant, cited: Hamilton v. Willing, 73 Texas, 603; McCreary v. Gaines, 55 Texas, 485; Alexander v. Tomlinson, 40 Ark., 216; 21 Am. & Eng. Enc. of Law, 514.

*Ross & Terrell,* for appellee.—The contract is a device for the sale of the goods, whereby under the form of an agent's contract a sale of the goods was made by appellant to Hood & Co., in which the maker's title to said goods is retained solely for the purpose of securing to itself the price agreed upon. The contract is a conditional sale and not a consignment. Benjamin on Sales, 8; Peek v. Heim, 14 Am. St. Rep., 865; Nutter v. Wheeler, 2 Low. (U. S. Dist. Ct.), 346; in re Linforth, 4 Sawyer (U. S. Cir. Ct.), 370; Fish v. Benedict, 74 N. Y., 613; Haak v. Linderman, 64 P. St., 499; Murch v. Wright, 46 Ill., 487.

DENMAN, ASSOCIATE JUSTICE.—The Court of Civil Appeals have certified to us the question, "Whether the contract hereinafter set out had the effect of merely making Hood & Co. the factors of appellant, or whether they thereby became the vendees of appellant; that is to say, whether the contract should be construed on its face as one of consignment merely, or one of sale." The contract referred to in the above certificate is in substance as follows:

"This agreement between Milburn Mfg. Co., party of first part, and Hood & Co., party of second part, witnesseth: ( 1) That first party agrees to manufacture and ship to second party the following described vehicles to be sold and accounted for to first party in cash or purchaser's note, as herein described, at the prices herein stated (here follows detailed description of vehicles and prices). All notes to be on blanks furnished by first party, second party to see that the blanks therein retaining a mortgage on articles sold are properly filled out and that a mortgage is thereby created, and second 'party shall have no authority to take notes not in accordance with this provision;' (2) that second party agrees to receive, store, pay freight, and keep under cover and good condition, and fully insure at their own expense, in the name and for the benefit of first party all vehicles sent, until sold by second party or ordered away by first party as herein provided, to pay all taxes on all vehicles, to make all reasonable efforts to sell same, to settle for all vehicles sold, to make all sales and take all evidence of indebtedness therefor for and in the name of first party, to remit the cash and notes received for said vehicles to first party. All notes so transferred to be endorsed and guaranteed by second party, who agrees to take up and pay cash for all of such notes as should not be paid in sixty days after maturity; second party to make no charge against first party for selling, storing or handling the vehicles, their sole commission and compensation for doing such

business to be the margin or difference between the price herein stated and the prices at which said vehicles shall be sold, to be ascertained and received by first party. Second party agrees to sell all the vehicles under this contract within twelve months and in case of failure or neglect to do so, "to settle for those remaining unsold in the following manner, to-wit: At the option of first party to either give their note due in three months with ten per cent interest, payable to first party or order, or to pay cash for them at the end of three months, or to store said vehicles in good order free of charge subject to the order of first party; (3) that the ownership of all vehicles furnished under this contract or their proceeds shall remain in first party until settlements shall have been made for them by second party as herein provided, and that the money and effects received in the course of the business of this agency shall in no case or under any circumstances be appropriated to the use of the second party until such settlement is made and the compensation or commission of second party has been ascertained and set apart by first party; (4) This agreement hereby made revocable at the pleasure of first party, which reserves the right to withdraw any of the above jobs at any time; (5) This contract only applies to above goods now on hand at Fort Worth, Texas."

The contract is quite voluminous, but we think the above is the substance of its stipulations.

A factor is one to whom goods are sent for sale on commission; the relationship between him and the consignor is that of principal and agent, the general property in the goods remaining in the consignor. If he undertakes to guarantee the payment of the debts arising through his agency, he is said to sell on a del credere commission. In Mechem on Agency, sec. 1014, it is said, "The nature and extent of his obligation have been much disputed, the later English and some American cases holding that he is liable as a surety merely; but the weight of authority in the United States is undoubtedly in support of the rule that a factor who sells under a del credere commission is liable as a principal, and that if the debt be not paid when due, indebitatus assumpsit will lie against him at once for the amount." We do not feel called upon to express an opinion as to which line of decisions states the correct rule in this State.

At all events it is clear that his contract of guaranty is not at all inconsistent with his being a factor.

In case of sale the property in the goods passes to the vendee and, though the contract expressly provides for the reservation or retention of the title by the vendor until the purchase money be paid, the statute fixes its status as a mortgage; and the relationship between the parties is that of mortgagor and mortgagee. Harling v. Creech, 88 Texas, 300.

In the instrument before us, the first party reserves (1) the absolute right to cancel the contract or to withdraw any of the "jobs" at any time, (2) the ownership of the vehicles or their proceeds, all notes to be taken in their names and, together with all cash received, to be remitted to

them, they to ascertain and set apart to second party their commission, which in the settlement provided for it was evidently contemplated should be offset against their liability on their guaranty of uncollected notes and other obligations in the contract assumed by them. Even as to vehicles unsold at the end of the year, the first party had the right to order the second party to store them free of charge, subject to the order of first party.

Upon compliance by both parties with all the obligations imposed upon them by the contract, the first party would have had the entire proceeds of sales and all unsold vehicles and owed the second party the commissions fixed thereby on vehicles sold, unless they had elected at the end of twelve months to require the second party to take the unsold vehicles on three months time, in which latter event only would the second party under the contract have acquired the title to any of the vehicles.

We are therefore of opinion that Hood & Co. were merely the factors of appellants and that the instrument should be construed to be a contract of consignment and not one of sale.