## SCRUGGS et al. v. CROCKETT AUTOMO-BILE CO.

### No. 7574.

Court of Civil Appeals of Texas. Austin.
April 29, 1931.

Rehearing Denied July 22, 1931.

Leachman, Gardere & Bailey, of Dallas, and Woodward, Hart, Gay & Hart, of Austin, for appellants.

Hart & Patterson, of Austin, for appellee.

McCLENDON, C. J.

Appellee (a private corporation) instituted this proceeding under title 125, R. S. 1925 (articles 7402–7425), against appellants (copartners doing business under the name of Packard Scruggs Company), to try the title to a Packard automobile. Trial to the court without a jury resulted in a judgment awarding the automobile to appellee. The appeal is from this judgment.

Appellee purchased the car on· March 3, 1930, from Rascoe, who had purchased it on October 7, 1929, from C. E. Motor Company (dealer at Coleman), had had it registered in his name, and had operated it ever since that date. Appellants asserted ownership and that the sale by C. E. Motor Company to Rascoe was unauthorized, since the former held the car under a bailment contract between it and appellants. Appellee's title is predicated upon a sale by appellants to C. E. Motor Company, and the claim that appellee and Rascoe were bona fide purchasers. The questions in the appeal involve the legal effect of delivery of possession by appellants to C. E. Motor Company, and the bona fides of Rascoe and/or appellee. The evidence and unassailed findings of the trial court will support the following:

Appellants were dealers in Packard cars at Dallas, and C. E. Motor Company (a copartnership) was a dealer at Coleman, in new and secondhand automobiles, having a show room at Coleman for the purpose of exhibiting new automobiles for sale. On September 3, 1929, C. E. Motor Company applied to appellants for the agency for Packard cars at Coleman. The application was upon the regular form of appellants, and provided generally for the consignment by appellants to C. E. Motor Company of motor vehicles for sale upon commission. The proceeds of sales were to be the property of appellants and to be held in trust for them. On September 12, 1929, C. E. Motor Company executed an instrument designated a consignment agreement, acknowledging receipt of the automobile, and having the following pertinent provisions: Authority to sell for cash only, and to hold the proceeds in trust for appellants; specific denial of right to lend, rent, mortgage, pledge, or incumber, "or, except in cases of bona fide prospective sales, shall not operate, use or demonstrate said motor vehicle, but may immediately drive it direct to the undersigned's place of storage, and there hold same expressly subject to the terms thereof"; also "the undersigned agrees to sell the above described motor vehicle within ——— days from the date hereof, and in case of failure or neglect to do so, to settle ·for the same in the following manner, to-wit: at the option of Packard Scruggs Company to pay Packard Scruggs Company therefor the sum of ——— Dollars in cash, or to return the same to Packard Scruggs Company, free of charge, at its office in Dallas, Texas, and receive from Packard Scruggs Company any advancement made thereon by the undersigned." The court found that the automobile was delivered on September 12, 1929, under this agreement. Mowdy, an employee of appellants, testified that this receipt was merely signed temporarily, pending receiving from the printer forms of bailment contract, and that later on the same day a bailment contract was substituted for the consignment contract. The court's finding in this regard was that after delivery of the car under the consignment receipt and on the same day, appellants obtained the bailment

contract from the C. E. Motor Company who made a $500 deposit thereon. This bailment contract was for a period of 90 days, and provided that the automobile was delivered to bailee for the purpose of display only. The bailee acknowledged that there was pasted upon the windshield, in full view, the following: "This automobile is the property of the Packard Scruggs Company, Dallas, Texas." And the bailee agreed not to remove or deface this notice and to replace it should it be removed or defaced; and further "that he will not directly or indirectly by word or conduct represent that said automobile is owned by him, or that his possession of said automobile is otherwise than upon the terms and conditions thereof." Appellee was given the right to display the automobile "at his place of business as an example of the current model of the Packard automobile for a period of 90 days, or until (prior to the expiration of 90 days) demand is made therefor." The bailee also agreed to pay for the privilege of displaying the automobile at the rate of $——— per calendar month. This blank was filled by the oral evidence of Mowdy as being 10 per cent. of the cost of the car, which was to be deducted from the deposit; the amount of which was left blank in the contract, but was supplied by Mowdy's testimony at $500, acknowledged by the contract to have been deposited with the bailor. The automobile was driven by a representative of C. E. Motor Company from Dallas to Coleman, on September 12, 1929, and placed on exhibit in its show rooms for sale to all prospective purchasers from said date until October 7, 1929, when it was purchased by Rascoe. The court found (and the finding is unassailed) that appellants "knew that said car was exhibited for sale from said time, September 12, 1929, to October 7, 1929, as ordinary merchandise or automobile"; and that it knew of the sale to Rascoe on or immediately subsequent to October 7, 1929. Rascoe testified that he had previously purchased a Packard from C. E. Motor Company, for which he had given his notes; that he purchased the car in suit on October 7, 1929, the consideration being in part services which he had theretofore rendered to C. E. Motor Company, and the balance in services thereafter rendered. The evidence is sufficient to support the finding that he had no knowledge or notice of the terms under which the car was held by the C. E. Motor Company. Rascoe had the car registered in his own name, drove it to San Antonio, where he presented it to his then wife, and he drove the car on the streets of San Antonio and elsewhere from that time until March 3, 1930, when he traded it to appellee, under the circumstances later detailed. Just what efforts appellants made to locate Rascoe and recover the car are not detailed, but both Mowdy and Rascoe testified to two long-distance telephone conversations between them some time after Rascoe's purchase. In one of these conversations Rascoe was at San Antonio, and in the other at Temple. Mowdy testified that Rascoe agreed to bring the car to Dallas and surrender it. Rascoe denied this, testifying that he told Mowdy that if they got the car they would have to get it by legal process. On February 14, 1930, appellants sued Rascoe for the car in San Antonio, but Rascoe was not served with process until after the sale to appellee, when sequestration was issued and the car taken thereunder from appellee's possession. This proceeding was then instituted in Travis county by appellee and the car replevied by it. The evidence will support the following findings regarding the circumstances under which appellee acquired the car from Rascoe:

Appellee was an automobile dealer at Austin. Rascoe had been known to its officers and employees for some time. He was prominently known generally as a member of the State Ranger force, and favorably known to appellee. He had had the car in question at appellee's place of business for the purpose of light repairs or refueling and lubrication one or more times prior to March 3, 1930. On that date negotiations were begun and concluded whereby he exchanged the car for a new Packard owned by appellee, the latter at the sale price of $4,400, the car in question being appraised and accepted in the trade at $2,400. Rascoe gave his notes for the difference, secured by chattel mortgage on the new car, which mortgage was filed for record in Travis county. Rascoe exhibited his license receipt, showing that the car was registered in his name, and represented to appellee that he was the owner of the car, and that there were no liens or charges against it. The trade was consummated on the afternoon of March 3, 1930, and the new car was delivered to Rascoe and the car in question to appellee and placed in its sales room. The following morning a party, who was a neighbor of Rascoe's then wife (he having since October 7th been divorced and married the second time), and who was at appellee's establishment upon other business, and learned incidentally of the trade, intimated to one of appellee's employees that it might be well to ascertain Rascoe's title to the exchanged car; whereupon said employee telephoned the county clerk at Coleman, and learned that no mortgage or other lien had been registered against the car. Further telephone conversations traced prior ownership of the car to appellants, and in a telephone conversation between representatives of appellants and appellee, appellants' claim to the car was asserted, and appellee was requested to hold Rascoe, which it declined to do. The following day there was a conference between Rascoe, a representative of appellee, and appellee's attorney, in which Rascoe asserted his ownership of the exchanged car, and declined to rescind the sale or to deliver back to appellee the car he had purchased.

Later appellee brought suit to foreclose its chattel mortgage on the new car, and thereafter took a bill of sale thereto from Rascoe in consideration of the cancellation of the purchase money notes. It later traded the new car to a third party. There was no further communication between appellants and appellee until after this last trade was made, when negotiations were had, the effect of which was that appellee offered to turn over to appellants both the cars it had received in trade, provided appellants would make it whole in the transaction, including appellee's attorney's fees and expenses. This appellants declined.

While the findings of the trial court are not as definite as they might be upon the subject, it seems reasonably clear that it was the intention to find that the car was delivered to and held by the C. E. Motor Company under the consignment and not under the bailment contract. All of the testimony with reference to the delivery of the car to C. E. Motor Company, outside of the written instruments themselves, was by Mowdy, an interested witness, and we are inclined to the view that taking all of the circumstances into consideration, a finding that the bailment contract was not effective would be warranted. Appellants contend, however, that the finding of the trial court that appellants obtained the bailment contract after the consignment contract, and received thereunder the $500 deposit, was tantamount to a finding that the bailment contract superseded the consignment contract, under the doctrine that where a subsequent written contract is executed which is inconsistent in its terms with the former, it takes the place of the former and merges all of the provisions thereof in the subsequent. We will consider the case from both view points.

None of the blanks in either the consignment or the bailment contract were filled in. As stated, those in the bailment contract were supplied by the oral testimony of Mowdy, and it would have been equally competent to have filled the blanks in the consignment contract by oral testimony. Assuming these blanks to have been filled, the question then arises as to the proper construction of the consignment contract; that is, whether it was in fact a consignment contract or a conditional sale. If the latter, it was subject to R. S. art. 5489, and since it was not registered, creditors and bona fide purchasers would be protected.

There has been a vast amount of legal literature regarding the characteristics distinguishing a consignment from a conditional sale. As in many other phases of the law, there is quite a diversity of view among the authorities in construing the several varieties of provisions which from time to time have been employed in this character of instruments. It would not be profitable to enter into an extended review of the authorities, or to point out wherein difference of view and conflict of decision have arisen. We have reached the conclusion that the proper test for determining whether an instrument is a conditional sale or a consignment is that laid down in McKenzie v. Grocery Co., 9 Ga. App. 185, 70 S. E. 981, 982, where it is said: "If the person to whom the possession of the property is delivered gets it by virtue of a contract of purchase (i. e., gets it under such circumstances that the person parting with the possession can sue for the purchase price, irrespective of whether the person to whom the possession is delivered has sold or otherwise disposed of the goods), the contract is one of conditional sale, notwithstanding it may impose limitations upon the purchaser's right to dispose of the property and may require a definite plan of accounting."

Applying this test and filling the blanks in the above quotation from the consignment contract, we think the court correctly construed that instrument as a sale. What the parties may have labeled the instrument is immaterial; its true classification is to be determined by its provisions. Under the quoted provision, the C. E. Motor Company bound itself absolutely to sell the car, and upon failure or neglect to do so, appellants had the option of either demanding the price or the return of the car. The C. E. Motor Company could not at any time after execution and delivery of the contract have returned the car to appellants and been relieved of the obligation to pay for it, without the consent of appellants.

Accepting, however, appellants' view that under the court's finding the bailment contract superseded the assignment contract, we have reached the conclusion that under the trial court's findings title nevertheless passed to Rascoe and appellee as bona fide purchasers. We base this holding upon the general doctrine of estoppel.

The general principle here involved was announced in the leading English case of Pickering v. Busk, 15 East, 38, in which Lord Ellenborough wrote: "If the principal sends his commodity to a place where it is the ordinary business of the person to whom it is confided to sell, it must be intended that the commodity was sent thither for the purpose of sale. If the owner of a horse send it to a repository of sale, can it be implied that he sent it thither for any other purpose than that of sale? Or if one send goods to an auction room, can it be supposed that he sent them thither merely for safe custody? Where the commodity is sent in such a way and to such a place as to exhibit an apparent purpose of sale, the principal will be bound, and the purchaser safe."

This general principle is recognized in this state. Morris v. Sellers, 46 Tex. 391; Posey v. Adam Schaaf Co. (Tex. Civ. App.) 189 S. W.

977. In the former Chief Justice Roberts wrote: "The possession of cotton by a cotton factor, who is a factor only, not engaged in buying and selling on his own account, would not raise the presumption of ownership, so as to authorize others, who knew him to be only a factor, to deal with him in all respects as the owner. (Story on Agency, sec. 113.) The presumption would rather be, in such case, that he was in possession of it, on commission, for some other owner. It is well settled, however, that such presumption may be rebutted, by the real owner permitting his ownership to be concealed, and the property to be so acquired, managed, and possessed as to indicate to third persons that the factor is the ostensible and real owner of the property; and such ostensible owner, so held out as the real owner, may sell the property, in discharge of his previous debt, to one who has no notice, actual or constructive, of the defect of his title to it, and the sale will be held valid."

Prof. Williston (Sales [2d Ed.] vol. 1, p. 720), commenting on Lord Ellenborough's above quotation, says: "Doubtless in the case here supposed the owner's action in sending his goods to a sales room is some evidence of authority to make a sale, but Lord Ellenborough seems to have supposed that a sale by the person intrusted would transfer a title to a purchaser even though the original owner intrusted the goods to the possessor for some purpose other than sale, which clearly appeared from the evidence. So far as Lord Ellenborough's remarks contain this implication, they go beyond the law both before and since the decision of the case in which the remarks were made."

The mere intrusting of possession to one engaged in the business of selling the particular article is quite generally held not to estop the true owner from claiming his property from one who has purchased in good faith from such party in possession. Just what additional acts or circumstances are essential to clothe the party in possession with indicia of ownership is a subject upon which there is much diversity of view in the adjudicated cases. We deem a discussion of the authorities upon this subject unnecessary here. Our holding is based upon the particular facts of this case, the essential features of which are: That appellants were dealers in Packard cars and were interested in putting them on the market; that the motor company was a dealer in new and old cars; that the car in question was delivered by the former to the latter for the purpose of display only, with no right of sale; that appellants knew that this stipulation was violated, and that the car was being offered for sale generally in the sales room of the motor company; and that in the due course of business under such sale the purchaser would have the car registered in his own name as owner.

These facts we think sufficient to warrant a finding that appellants clothed the motor company with the indicia of ownership, and a sale by the latter to a bona fide purchaser passed the title to the car.

We think the evidence sufficient to uphold the finding of bona fide purchaser in Rascoe to the extent of his subsequently rendered services, and of appellee in toto.

The case as made by the pleadings only involved title to the car delivered to the motor company; and for that reason we pretermit any discussion of other issues raised in the brief and argument.

The trial court's judgment is affirmed.

Affirmed.

### On Motion for Rehearing.

Appellants contend that the trial court's finding that appellants "knew that said car was exhibited for sale from said time, September 12, 1929, to October 7, 1929, as ordinary merchandise or automobile," is ambiguous as to the time of appellants' knowledge; that the uncontradicted evidence shows that such knowledge was not acquired until the car was sold; and that this ambiguity should be resolved in accordance with such evidence. The evidence leaves a great deal to inference and is almost exclusively from interested witnesses. While it is true that the finding is not expressly that appellants knew that the car was being offered for sale while it was being so offered, we think that is the natural import of the language used and is the only reasonable interpretation to be given to the finding. There would be no relevancy in a finding that appellants acquired such knowledge at some indefinite time after the sale of the car. Such finding could have no material bearing upon any issue in the case. Furthermore, it is a cardinal rule applied to findings of trial courts that they should be so construed as to support the trial court's judgment. Elder, Dempster & Co. v. Weld-Neville Cotton Co. (Tex. Com. App.) 231 S. W. 102.

It is further contended that our holding that the consignment contract was in effect a conditional sale is in conflict with that in Milburn Mfg. Co. v. Peak, 89 Tex. 209, 34 S. W. 102.

We find it unnecessary to consider the question or to pass upon the proper construction of the consignment contract. It was not our intention to rest our decision upon that issue. We sustain appellants' contention that the trial court's finding that appellants obtained the bailment contract after the consignment contract, and received thereunder the $500 deposit, was inconsistent with the further legal existence of the consignment contract, and was therefore tantamount to a finding that the bailment contract superseded

the consignment contract under the doctrine stated in our original opinion. This holding renders a construction of the bailment contract unimportant, and that portion of our original opinion may be disregarded.

Other points raised in the motion have been fully covered in our original opinion.

The motion is overruled.

Overruled.