**DALLAS OIL & REFINING CO. v. WASHINGTON COTTON OIL CO.   (No. 1923.)**

(Court of Civil Appeals of Texas.   El Paso. April 15, 1926. Rehearing Denied May 6, 1926.)

**1. Sales ⪪166(1)—Buyer may reject thing he did not agree to buy, though it is like thing bought, and of equal value or usefulness.**

Buyer cannot be compelled to accept and pay for something he did not agree to buy, and may reject it, though it is like thing bought, and of equal value or usefulness.

**2. Appeal and error ⪪991—Meaning of ambiguous language of contract and parties' intention are mixed questions of law and fact, and lower court's interpretation, supported by evidence, is binding on appellate court.**

Provision of contract for sale of oil "first made October, as made," being ambiguous, and subject to explanation by parol, its meaning and party's intention are mixed questions of law and fact, and lower court's interpretation,

if supported by evidence, is binding on appellate court.

**3. Appeal and error ⪪931(1)—Court filing no findings must be assumed to have resolved fact issues in manner supporting judgment.**

Where court, sitting without jury, filed no findings, it must be assumed that it resolved fact issues in manner supporting judgment.

**4. Sales ⪪87(3)—Finding that clause "first made October, as made," in contract for sale of oil was not intended to limit subject to oil produced by seller's mill held warranted by evidence.**

In action for breach of contract by rejecting oil of quality prescribed on ground that it was not produced by seller, evidence *held* to warrant court's finding that clause "first made October, as made," was not intended to limit subject of sale to oil produced by seller's mill.

**5. Sales ⪪384(7)—Buyer rejecting oil of prescribed quality held liable for difference between contract price and market price on resale.**

Where oil tendered measured fully up to prescribed quality, buyer was liable for difference between contract price and market price, for which it sold on rejection by buyer.

**6. Sales ⪪384(7).**

Buyer wrongfully rejecting oil tendered *held* liable for broker's charge for reselling it, and for protest fees on dishonored drafts.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Action by the Washington Cotton Oil Company against the Dallas Oil & Refining Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Eckford, Whisenant & McMahon, of Dallas, for appellant.

Thomas, Frank, Milam & Touchstone, of Dallas, for appellee.

HIGGINS, J.   Through a broker acting for both of them, Alston Boyd, doing business under the name of Washington Cotton Oil Company, hereinafter called Washington Company, contracted to sell to the Dallas Oil & Refining Company, hereinafter called the Dallas Company, and the latter contracted to buy, five tanks of prime crude cotton seed oil for October, 1920, delivery.

The terms of the contract are evidenced by the broker's confirmation memorandum, addressed to the seller, which reads:

"Dallas, Texas, September 20, 1920.

"Washington Cotton Oil Co., Dallas—Gentlemen: Referring to the 'phone & wire messages exchanged between us this date, we beg to confirm the following sale for your account to Dallas Oil & Refining Co., Dallas, Texas:

"*5 tanks 54,375 lbs. each, basis prime crude O. S. oil, at 11¼¢ per lb. f. o. b. Dallas,* settlement as per code word 'flag.' Seller guaranteeing weights and quality at destination.

---

⪪For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Terms: Sight draft on buyer, with bill of lading attached.

"Drafts to be free of exchange, seller paying brokerage.

"Subject to the rules of the Texas Cotton Seed Crushers' Association.

"Shipment: *first made October, as made;* buyer furnishing tank cars. Routing directions to be furnished by the buyer. This memorandum of sale is made in triplicate, the original being sent to the seller, one copy to the buyer, and one copy retained in this office as record.

"Yours very truly,

"The Associated Manufacturers of Cotton Seed Products,

"By W. D. Yopp, Assistant Manager.
"As Broker Only."

(The italics are ours.)

Within the prescribed time the Washington Company tendered to the Dallas Company five tanks of prime crude cotton seed oil, which was rejected by the latter, and which turned the oil over to a broker, who sold the same for considerably less than the contract price; the Dallas Company becoming the purchaser. The proceeds of the sale were paid to the Washington Company, less the broker's commission for making the sale.

The Washington Company obtained judgment against the Dallas Company for the difference between the contract price of the oil and the price for which it actually sold, plus the brokerage charge and certain protest fees which had accrued and been paid by it on the drafts which it had drawn upon the Dallas Company to cover the purchase price of the oil when it was tendered, and which drafts were dishonored by the Dallas Company, because of its rejection of the oil. From this judgment the Dallas Company has appealed.

The Washington Company makes cotton seed oil. Due to delay in the operation of its mill in 1920, the Washington Company foresaw that it would not have sufficient oil to complete its contract in October, whereupon it bought a sufficient amount from cotton seed mills in that vicinity. It ran this oil into its settling tanks, where it was mixed with oil of its own production. This mixed oil was then transferred to five tank cars, and tendered to the Dallas Company, which rejected it upon the ground that it was not the production of the Washington Company, and under the contract of sale it was not required to accept any oil except oil produced by that company. It was not contended by appellant that the oil was not of the quality prescribed by the contract. In fact, its president and general manager testified it was probably of a slightly higher quality than he had the right to demand.

[1] It is a well-settled rule of the law of sales that a buyer cannot be compelled to accept and pay for something which he has not agreed to buy. 2 Mechem on Sales, 1154. If the thing tendered be not what he agreed to buy, he may reject it, even though it is like the thing he bought (Columbian Iron Works

v. Douglas, 34 A. 1118, 84 Md. 44, 33 L. R. A. 103, 57 Am. St. Rep. 362), and though it is of equal value or usefulness (King v. Rochester, 39 A. 256, 67 N. H. 310). In Vassau v. Campbell, 81 N. W. 829, 79 Minn. 167, cattle tendered were older than those contracted for, and it appeared they were probably more valuable. It was held this did not satisfy the terms of the contract. We agree with appellant that it was within its rights in rejecting the oil, if its further contention be sound that the contract called for oil of the Washington Mill production or manufacture.

[2] The first italicized portion of the contract provides for the sale of five tanks of cotton seed oil "basis prime crude." There is nothing in this portion of the contract which limits the subject-matter of the sale to the production of the appellee. Appellant does not claim it does, but asserts that the following provision of the contract does so limit the same, viz.: "First made October, as made." This language is ambiguous, and subject to explanation of its meaning by parol. The meaning of this language and the intention of the parties thus becomes a mixed question of law and fact, and, if the interpretation of the language by the lower court be supported by the evidence, it is binding upon this court. Alstin v. Cundiff, 52 Tex. 453; Taliaferro v. Cundiff, 33 Tex. 415; Lamm v. Brannon (Tex. Civ. App.) 244 S. W. 256.

[3] The case was tried without a jury. The court filed no findings, so it must be assumed it resolved all issues of fact in such manner as will support the judgment.

[4] The witnesses all agree that the words "first made October, as made," are trade terms, and mean the oil sold is oil produced in October, and that by "first made" is meant the buyer has the right to demand, and the seller the right to require the buyer to accept, the first made in that month. "As made" means that as each tank car is produced the buyer has the right to demand its delivery, and the seller has the right to demand its acceptance; in other words, that neither party, as against the demand of the other, could delay tender and acceptance until the last of the month or until five tanks were ready for delivery. Thus far the witnesses are in agreement. The witnesses for the Dallas Company further testify that "first made, as made," means the production of the seller, and limits the subject-matter of the contract to such production. On the other hand, the plaintiff and his witnesses deny that it has this meaning. They say the words "first made, as made," have no relation to the matter of who the oil is to be produced by, and simply govern the time of shipment as above indicated.

Alston testified:

"'First made, as made,' has no particular significance as applicable to oil made only by the person who made the contract. * * * I am familiar with the use of the language in the trade, I have been in the business all my life

since I was 17 years of age. The only meaning I have ever heard attached to the language 'first made, as made,' is that it put the seller in position that whenever the oil is available he can have it moved and paid for by the buyer. It relieves the seller of the necessity of carrying the oil until the end of the month, and he can get his money out of it whenever the oil is available, or whenever he is ready to get it out."

W. L. Patton testified:

"The language 'first made' is language that is common in the trade, and the language 'as made' is common language in the trade more or less. 'First made' means the first oil made in that month, whatever month it was, and 'as made' would mean just as the stuff was made and became available, and those words, when used in connection with the words 'shipment,' applies strictly to the shipment, and has no significance at all in regard to quality, and has no significance as to the party by whom the oil is made."

S. H. Dunlap testified:

"If I made a contract to sell you several tanks of oil, and the contract had this in it 'first made October, as made,' that would not mean that I had to make that oil in October. It means, if I make it, I deliver it, and, if I don't make it, I deliver it anyhow. If I sell you oil, I am supposed to deliver you oil. If I am making oil in October, I deliver the oil. I was making oil in October, 1920. 'October' means it must be delivered in the month of October. 'First made' means presumably the first you make. I never sold oil 'as made.' I have sold other products that way, shipment as made, and I have filled those orders from products that my mill did not make. If I didn't have it, I went out and bought it. That is customary and the rules of the business. The term 'first made' is put in the contract to protect the seller. It doesn't state first made by whom. That is put in there because you want to ship it as fast as you make it, if you make it; if you don't, you have to ship it anyhow. 'First made' don't necessarily mean your make. If I made a contract with 'first made, as made' in it, it means I fill that order with my oil as far as it goes, and after that I have got to get it. I can go anywhere in the market and fill that order. I have got to fill that order whether I make it or not. If I had it in my own tanks, I would not go out and buy it."

Testimony of other witnesses is to the effect that the words necessarily refer to the production of the seller, but they do not go to the extent of saying that they limit the right of the seller to tender his own production, and in this connection it may be said that all of the witnesses testify oil of the required grade made by one mill is just the same as oil of the same grade made by another mill.

[5] The contract was for the sale of five tank cars of cotton seed oil "basis prime crude," and under the evidence the trial court was warranted in finding that the clause in the contract relied upon by the appellant did not, and was not intended by the parties to,

limit the subject of the sale to oil produced by the appellee's mill. Since the oil tendered measured fully up to the prescribed quality, the court did not err in holding appellant liable for the difference between the contract price and the market price for which the oil was sold upon rejection.

There is no merit in those assignments which assert the evidence is insufficient to show that the amount of oil tendered was 268,200 pounds. The court adopted the appellant's evidence as to the weight of one of the cars and the evidence of appellee as to the weight of the other four. This matter presents no error.

[6] When the oil was rejected, it was, in accordance with the rules of the Texas Cotton Seed Crushers Association, delivered to a broker by appellant, and sold for the account of whom it might concern. The broker's charge of $90.62 was paid by appellee. It also paid protest fees of $9.05 on the dishonored drafts. These charges were brought about by the wrongful rejection of the oil and dishonor of the drafts, and the court did not err in rendering judgment therefor against appellant.

Affirmed.