COOK PAINT & VARNISH CO. v.
LYDICK–BARMANN CO.

No. 15135.

Court of Civil Appeals of Texas.
Fort Worth.

May 12, 1950.

Rehearing Denied June 9, 1950.

Alexander & Martin and Aubrey G. Alexander, all of Fort Worth, for appellant.

W. S. Margowski, of Fort Worth, for appellee.

HALL, Justice.

Appellee Lydick-Barmann Company sued appellant Cook Paint & Varnish Company in a district court of Tarrant County to recover for labor done and materials furnished by it to appellant in repairing a Frigidaire Air Cooling system and Payne Heating system which appellee had installed in appellant's place of business located in said County.

Trial was to the court which rendered judgment in favor of appellee and against appellant for the sum of $825.57, plus interest and costs.

It was agreed between the parties that the damages to said equipment were caused solely by flood waters of the Trinity River on May 18, 1949.

Appellant's points are as follows:

"First Point: The court erred in rendering judgment in favor of Appellee and against the Appellant for labor done and materials furnished to correct and remedy defects and repair damages to said heating and cooling systems, caused solely by the flood waters of the Trinity River, where, by the terms of its plain and unambiguous written contract of guaranty and warranty, said Appellee had obligated itself to correct 'any and all' defects found or desired corrected to said systems within the period said defects and damages happened.

"Second Point: The court erred in rendering judgment in favor of Appellee and against the Appellant for labor done and materials furnished on said heating and cooling systems, which were necessary to make said systems maintain the temperatures unconditionally guaranteed by Appellee's contract during the period covered by said guarantee.".

Appellee began to install said equipment in appellant's place of business during the month of July, 1948, at which time appellee made the following warranty to appellant:

"The above equipment we unconditionally guarantee for a period of 1 year will provide and maintain the following temperature throughout the store and office area when occupied by as many as 35 people, and using 8,600 watts of light:

"80 deg. F. during the heating cycle when the outside temperature is zero, and

"75 deg. F. dry bulb with the relative humidity 50% during the cooling cycle when the outside temperature is 100 deg. F. dry bulb and 78 deg. F. wet bulb.

"In addition to the above warranty, we guarantee the installation to be free from defects in material and workmanship for a period of 1 year from completion and will remedy any and all defects found or desired corrected within that time, except damage due to your gross negligence."

In support of its contention appellant submits the following: (1) That the defects and damages to such equipment by the flood waters of said River occurred within the one year period of warranty; (2) that after said damage the system would not maintain the temperatures unconditionally guaranteed; (3) it was necessary that said labor and materials be furnished in order to repair the system so as to maintain the temperatures unconditionally guaranteed; (4) such damages to the system were not caused by appellant's negligence; (5) it notified appellee of such defects within the one year period of warranty; (6) that said system was repairable and the buildings to be heated and cooled were intact after said flood; (7) that said heating and cooling systems were sold and installed by appellee in appellant's place of business under appellee's written contract of guarantee and warranty; and (8) when the damage to said system occurred appellee had not tested the systems to determine whether they would maintain the stated temperature during the cooling cycle.

Appellant argues that since appellee's warranty did not except defects or damage caused by flood waters of the Trinity River and since it unconditionally guaranteed the system to maintain the stated temperatures in any and all events, and under such unconditional warranty appellee guaranteed and insured within the scope of its warranty that said systems would provide and maintain the stated temperatures against all contingencies, other than the exception expressed in the warranty, it therefore owed a duty to appellant to repair said system from damage of the flood waters free of cost.

Appellant bases its contention upon the general law to the effect that there can be only one contingency which would relieve appellee of full performance, other than the exception listed in the warranty, such contingency being the destruction of the subject matter of said contract. In other words, it contends that other than the exception listed in the warranty, appellee would owe the duty to repair said systems at its own expense, regardless of what happened to it so long as appellant's building which was to be cooled and heated by said systems was intact. It cites for such authority 10 Tex.Jur. 436; Weis v. Devlin, 67 Tex. 507, 510, 3 S.W. 726, 60 Am.Rep. 38; and Northern Irrigation Co. v. Dodd, Tex. Civ.App., 162 S.W. 946.

Appellee's witnesses testified that after the flood and at the request of appellant its employees inspected the plant and found that all of the electric motors had been submerged in water and therefore damaged to such extent that it was necessary to repair them before they could be used again. The entire heating equipment had been submerged, the burners were full of mud; the various electrical valves and electrical parts, bearings and machinery were all filled with mud; some of the motors were mounted at least six or seven feet from the floor; the ceiling of the building had been wet and had been covered with water; the unit through the action of the water had been moved slightly, said unit weighing approximately 1800 pounds; certain pipe lines were damaged; the duct work located in the space between the ceiling and the roof had been insulated with fiber glass and it had been submerged and said fiber glass was torn loose and hanging down, etc.

Appellee defended appellant's cause of action alleged against it on the theory that its warranty should not be construed to obligate it to repair damages caused solely by flood waters and that such damages so caused by such flood waters were not defects in material or workmanship required to be remedied by it within the scope of said warranty and that such warranty of per-

formance carried with it the implied operation of said system under normal conditions and in the usual, ordinary and customary manner for operation of said system, and that damage caused by flood waters was an act of God which was an act beyond the control of appellee and was not contemplated within its warranty. Another contention of appellee is that damage caused by flood waters was not in contemplation of the parties when the contract was made and should therefore be excluded.

■ We agree with appellee's contention that the damage caused by flood waters was not in contemplation of the parties when the warranty was made. We are not to decide the question here that performance was impossible because the facts show appellee was able to repair the machinery. It has been held that a person may bind himself to perform upon an unqualified undertaking where the event which causes the damage might have been anticipated and guarded against in the contract. For instance, in the case of Kingsville Cotton Oil Co. v. Dallas Waste Mills, Tex.Civ.App., 210 S.W. 832, wherein Kingsville Cotton Oil Co. entered into a contract with Dallas Waste Mills to mill run 200 bales of cotton linters and was prevented from performing the contract because of failure of power by the electric company, the court held in substance that furnishing of power by the electric company was not an implied condition or that the failure to furnish such power by the electric company rendered performance of the contract by appellant impossible; reasonable inference from language of the contract between the parties was that appellant had and would continue to have sufficient power necessary to run its mill, else some mention of it would have been made in the instrument. Such fact is the distinction between that case and the one before us. We believe reasonable minds agree that appellant and appellee did not contemplate the air conditioning system would operate while submerged under water or under a general neighborhood flooded condition. Further we find from the instrument as a whole the parties did not contemplate that appellee intended to insure the system against damage by flood waters.

In the case of Waters v. Yockey, Tex. Civ.App., 193 S.W.2d 575, 576, the court had before it a question of whether Yockey should recover from Waters for work done and materials used while repairing a basement by making it waterproof. The court said: "The word 'waterproof' in connection with a basement building is a relative expression and does not mean that water is to be kept out under all conditions and circumstances; and if a basement walls and flooring are so constructed as to keep out water and dampness under such weather conditions as might have been reasonably foreseen or anticipated, it is deemed waterproof in law. * * * And the finding that the later flooding of appellant's basement was due to 'conditions of the neighborhood' effectually acquits Yockey of negligence as regards the work and material supplied by him."

■ So "where the event which prevents the performance of a contract is of such a character that it cannot reasonably be supposed to have been in contemplation of the contracting parties, they will not be bound by general words which, though large enough to conclude, were not used with reference to the possibility of the particular contingency which afterwards happened." Kingsville Cotton Oil Co. case, supra.

■■ It has been held that a warranty upon machinery implies its operation under normal conditions and in the usual and customary manner. 37 Tex.Jur., p. 276, sec. 118. However, appellee went further in unconditionally warranting its equipment to provide the stipulated performance. This we construe to mean that it contemplated its machinery would furnish the temperatures stipulated even though conditions be abnormal, but in no event do we find from reading the above-quoted warranty that appellee and appellant contemplated the equipment would operate under such adverse conditions as would naturally cease operation of the machinery. To this extent the warranty was ambiguous. It has been held that ambiguous language is subject to interpretation by the court, it being a mixed question of law and fact, and if the interpretation of the language by the trial

585

court is supported by the evidence the same is binding upon the appellate court. Dallas Oil & Refining Co. v. Washington Cotton Oil Co., Tex.Civ.App., 283 S.W. 345, writ dismissed.

Judgment of the trial court is affirmed.