ED. T. WELCH v. PHELPS & BIGELOW WIND MILL COMPANY.

No. 416.—Decided June 8, 1896.

**Trusts—Statute—Consignment or Sale.**

The purpose of the statue against trusts (Acts. 1889, ch. 117, p. 141), was to prohibit "two or more persons" from uniting or associating their otherwise independent and possibly competing "capital skill or acts" for one or more of the five purposes therein specified; but not to interpose any obstacle to a principal's contracting with his agent with reference either to the terms or the subject matter of the agency.

**Same—Case in Judgment.**

By contract a manufacturer of patent wind-mills gave the exclusive right to sell them in certain counties to a firm, who agreed not to keep or sell any other wind-mill, and to sell these neither below nor above prices named in the contract, of which the lower or net price was to go to the manufacturer and the excess to the seller; title to the wind-mills shipped was to remain in the manufacturer until sold by the consignee, who was to make weekly returns and monthly settlements. Held, that the contract was one of consignment, not of sale, and created the relation of principal and agent between the parties; and was not such a contract as is prohibited by the law against trusts (Acts 1889, ch. 117, p. 141). Had the contract established the relation of vender and vendee it seems the result might have been different.

CERTIFIED QUESTION from Court of Civil Appeals, Second District, in an appeal from District Court of Armstrong County.

The question answered and the provisions of the contract upon which it arose are stated in the opinion of the court.

*Geo. E. Holland,* for appellants.—The contract was prohibited by the statute because of the agreement not to keep or sell any other wind-mills. Oil Co. v. Adoue, 83 Texas, 660; Bishop v. Palmer, 146 Mass., 469; Note to Angier v. Webber, 92 Am. Dec., 762.

The provision that sales should not be below the price list attached to

the contract is repugnant to subdivisions four and five of sec. 1, Act of March 30, 1889.

*J. A. Lucky*, for appellees.—The contract was not in violation of the Act of March 30, 1889, for the reason that it simply evidences the appointment of appellants as agent of appellee for the sale of its wind-mill goods in the territory specified and at prices therein stipulated. Milburn Mfg. Co. v. Peak, 34 S. W. Rep., 102; Burton v. Goodspeed, 69 Ill., 237; Bromley v. Elliott, 75 Am. Dec., 182; Denney v. Wheelwright, 60 Miss., 733; Slack v. Tucker, 23 Wall. (U. S.), 321; Higgins v. Moore, 34 N. Y., 417; 1 Pars. on Cont., 91; Fulkerson v. White, 22 Texas, 674; Harbert v. Neill, 49 Texas, 143-161; Bryce v. Brooks, 26 Wend. (N. Y.), 367.

To come within the scope of the statute the parties entering into such contract must at the time of making and entering into same be already engaged in the business as dealers in the commodity the same as that which is the subject of the contract. Anheuser-Busch Brewing Assn., v. Houck, 27 S. W. Rep., 695; Leslie v. Lorillard, 1 Law. Rep. Ann., 456; Diamond Match Co. v. Roebes, 106 N. Y., 473; Heckers v. Fowler, 69 U. S., 123; Long v. Towl, 42 Mo., 545.

The law as to restraint of trade has never been extended to a business protected by a patent. Morse Twist Drill & Mach. Co. v. Morse, 103 Mass., 73; nor to a business which is secret; Peabody v. Norfolk, 98 Mass., 452; Vickery v. Welch, 19 Pick., 523; Jarvis v. Peck, 10 Paige, Ch. 118.

DENMAN, Associate Justice.—The Phelps & Bigelow Windmill Company, of Kansas City, Missouri, party of the first part, on the 22d day of May, 1890, entered into a contract with Welch and others, partners under the style of The Claude Lumber Company, of Claude, Texas, parties of the second part, wherein first party agreed (1) to give to the second party the exclusive right to sell during the year 1890 a certain patent of windmill, manufactured by first party, in certain named counties, but in no other; (2) "to ship to party of second part from time to time such windmills as it may deem necessary for the proper conduct of the business herein undertaken by parties of second part;" and second party agreed (1) to thoroughly and fairly canvass said territory, to make all sales for cash, or so that the cash would at least be paid when the windmill was erected; to make weekly returns by mail to party of first part of all sales with names and addresses of purchasers, together with prices, no sale to be made below the price list attached to the contract, marked "net price," nor above the price list attached, marked "selling price;" settlements to be made between the parties and "remittances made to party of first part as called for by said settlements at least once per month, the basis of such settlements to be that party of first part is to receive for all goods sold the net price above mentioned, and all moneys beyond such amount and not in excess of the selling price is to belong to party of second part; (2) at their own cost, to do all necessary work

in erecting windmills sold, to do the same in a workmanlike manner, and make all needed repairs in order to create public satisfaction and demand for such goods, and not to directly or indirectly be engaged in the sale of or keep in stock any other windmill goods during the existence of the contract; (3) to save party of first part harmless from all losses by way of suits and litigation of any kind emanating from their trade and business, and also as to freight charges on goods both ways between Kansas City, Missouri, and Claude, Texas, including expenses that may be incurred to party of first part in looking up and gathering in its property that may be shipped to the parties of the second part under the contract, in the event of the termination of the contract and their neglect to properly perform said work; and that they will, at their own expense, reship to party of first part all windmill goods that may be on hand unsold at the termination of the contract in good order as received, or remit cash therefor according to the net price above mentioned."

It was further stipulated in said contract that "the title and ownership of the windmill goods so to be shipped to the parties of second part shall still remain vested in the party of first part after such shipments, regardless of change of possession thereof, up to the time that same shall be sold to bona fide purchasers for purposes of erection upon their property within said territory," and that party of first part had the right to terminate and revoke the contract at any time upon failure of the parties of the second part to faithfully comply with its terms, or any one of them.

The above is in brief, we believe, a substantial statement of the long contract included in the certificate.

The question certified by the Court of Civil Appeals is, whether said contract was "in violation of the act of March 30, 1889, defining trusts and conspiracies against trade?"

Under the authority of Milburn Manuf'g Co. v. Peak, 34 S. W. Rep., 102, 89 Texas, ante., said contract was one of consignment and not one of sale, did not pass title to the windmills to the second party, but created the relation of principal and agent between the parties thereto.

In order to hold a contract as creating a "trust" within the terms of the Act of 1889, p. 141, there must have been formed thereby "a combination of capital, skill, or acts by two or more persons, etc."

The purpose of the statute was to prohibit "two or more persons," etc., from uniting or associating their otherwise independent, separate and possibly competing "capital, skill, or acts," for one or more of the five purposes therein specified. Therefore, in Houck & Dieter v. Brewing Association, 88 Texas, 184, 27 S. W. Rep., 696, it was held a violation of the statute for independent dealers in beer to combine to control the market; and in Texas & Pacific Coal Co. v. Lawson, 34 S.W. Rep., 919, 89 Texas, ante., it was held a violation of the statute for a coal company and an individual to enter into an agreement binding each to a series of acts intended to coerce the people, especially the miners of

Thurber, to spend their earnings for liquor at a certain saloon, and preclude anyone else selling liquor to them.

It was not the purpose of the statute, however, to interpose any obstacle to a principal's contracting with his agent with reference either to the terms or the subject matter of the agency. In the case before us it was entirely within the discretion of the principal, before as well as after the contract was signed, as to how many of its windmills it would send into the named territory, as well as to decline to sell for less than the net price, or permit its agent to sell for others. It controlled them all, and therefore there was no union or association of otherwise independent, separate and possibly competing "capital, skill or acts," and hence no combination. We therefore answer the question certified in the negative. If the title to the windmills had passed by the contract and shipment, thus establishing the relation of vendor and vendee, instead of principal and agent, between the parties thereto, a different result might have been reached, as intimated in reference to the contract between plaintiff and defendant in Houck & Dieter v. Brewing Association, 88 Texas, 190.