**BRENARD MFG. CO. v. CROWLEY MERCANTILE CO.    (No. 7128.)**

(Court of Civil Appeals of Texas. San Antonio. , March 19, 1924.)

**1. Monopolies ⊚⊃17(1)—Contract whereby retailer's selling price not fixed, not violation of anti-trust laws.**

Where in no part of contract for the exclusive sale of phonographs for a term of three years was it hinted that they must be sold at the retail price named therein, such contract was not in violation of the anti-trust laws.

**2. Monopolies ⊚⊃17(2)—Giving exclusive territory not violation of anti-trust laws.**

Giving exclusive territory for the sale of goods is not a violation of the state anti-trust laws.

**3. Sales ⊚⊃38(7)—Buyer not deceived by agent's trade talk.**

Where buyer knew that phonographs would cost a named sum and gave notes therefor, it

is unreasonable to suppose that he could have been deceived by representations of seller's agent that the machines would not cost anything, and such representations were not fraudulent.

**4. Sales ☞168½(5)—Seller not obligated to accept phonographs before end of three-year period.**

Where contract for exclusive sale of phonographs provided for a three-year agency, and that if the sales thereunder did not amount to a named sum seller would pay the difference in cash or repurchase the phonographs if returned in good order, seller was justified in refusing to accept the property before the end of the agency period.

Appeal from Tarrant County Court; H. O. Gossett, Judge.

Action by the Brenard Manufacturing Company against the Crowley Mercantile Company. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

James & Conner and Baylor B. Brown, all of Fort Worth, for appellant.

Marvin H. Brown, of Fort Worth, for appellees.

FLY, C. J. This is a suit based on six promissory notes in sums aggregating $422. Appellee answered admitting executing the notes, but alleging that they were given for certain goods, wares, and merchandise, and that at the same time a contract was made by the parties which was made a part of said notes. The contract showed that the notes were given to secure payment of $422, the purchase price of three phonographs known as the "Golden-Throated Claxtonolas," and 12 double-disc 10-inch records. It was agreed that appellee should be granted the exclusive agency for the phonographs for a period of three years, and it was agreed that if the sale of the phonographs did not amount to $422, appellant was to pay to appellee the difference in cash or repurchase the phonographs and records, returned in good order, and appellant agreed in 30 days to furnish appellee 50 names and addresses of persons who might be interested in the phonographs, and furnish 10 to 25 additional names every 60 days, and to be authorized to send a special salesman into the territory of appellee at any time to do field work and promote sales. The cause was submitted to a jury on special issues, and on the answers thereto judgment was rendered that appellant recover nothing on his suit.

The jury found that Mitchell, appellant's agent, fraudulently promised appellee that he would come back and canvass for the sale of the phonographs, and that appellee relied on the promise.

[1, 2] Appellee admitted its execution of the notes and that it was bound by them, unless they were invalid and not binding by rea-son of the fact that the contract was in violation of the anti-trust laws of Texas, by fixing the retail price and by giving appellee the sole right to sell the phonographs for a term of three years, in certain territory; that the notes and contract were procured by fraud. This is what we believe to be the gist of the defenses presented, as gleaned from fourteen pages of typewritten answer.

The contract does not in terms fix the retail price of the phonographs, the only references to retail prices being where the machines are described as styles A, B, and C, retail price, certain amounts, in the aggregate $562, followed by the statement: "Net price to dealer on agency contract, including services and privileges stated below, $442.-00." Again, in regard to what is termed "re-orders," it is stated there would be 40 per cent. trade discount from retail prices for cash in 30 days or 90-day note. An additional 25 per cent. discount was allowed when cash accompanied the order. The retail prices seem to be given merely to fix the discount and indicate the sum due to appellant. There is not a word in the contract tending to show that the price at which appellee should sell the phonographs was fixed. The retail price named was that at which appellant would sell the phonographs, but in no part of the contract is it hinted that the phonographs must be sold at those prices by appellee. We cannot by mere inferences and hypotheses fix a criminal intent upon appellant; but, on the other hand, it, like an individual, is entitled to the benefit of the reasonable doubt. The issue was not submitted to the jury and there is no testimony to sustain the charge of violation of the anti-trust laws. Giving exclusive territory for sale of the goods was not a violation of such laws.

[3] There is no testimony tending to show that the agent of appellant did not intend to assist appellee in the sale of the phonographs, at the time he made the promise. Appellee proved that it knew better about the condition of the people in its section, their tastes and desires, than the agent, and could not have been deceived by the trade talk given by the agent. Appellee knew as much about the contract as the agent, and knew what the terms of payment were, and could not have been deceived by any representation that the machines would not cost five cents. Appellee knew that they would cost $422, and gave notes for that amount. It is not reasonable to suppose that a business firm could have been deceived by the representations and promises of an agent, who, from the very facts concerning the transaction, could not have had any authority to make the promises on which the charge of fraud is based. The representations could not form a basis for a charge of fraud with

which to destroy the contract. The agent had no authority, apparent or otherwise, to make the promises, and appellee dealt with him at his own peril. Overton v. Insurance Co. (Tex. Civ. App.) 189 S. W. 514; Case Co. v. Morgan (Tex. Civ. App.) 195 S. W. 922; Producers' Oil Co. v. Green (Tex. Civ. App.) 212 S. W. 68; Morgan v. Harper (Tex. Com. App.) 236 S. W. 71.

[4] The contract provides for a three-year agency, and provides that if the sales "under this contract do not amount to $422.00," appellant would pay the difference in cash or repurchase the phonographs, if returned in good order. Appellee executed six notes all of which became due in less than a year, and it must have contemplated that all of the notes might become due before it could sell the phonographs. It expected to have at least a part of the machines when it paid off the notes, because appellee demanded a bond as security, and it was given. Under the terms of the contract we think that appellant was justified in refusing to accept the property before the end of the three years.

Several of the real issues in the case were not submitted by the court, and the evidence did not justify a judgment in favor of appellee.

The judgment is reversed, and the cause remanded.