**ORMSBY et al. v. RATCLIFF et al.**
**(No. 854.)**

Court of Civil Appeals of Texas. Waco.
Nov. 7, 1929.

Rehearing Denied Dec. 5, 1929.

See, also, 298 S. W. 930.

Burgess, Burgess, Chrestman & Brundidge and L. E. Elliott, all of Dallas, for appellants.

Davis & Hatchell, of Dallas, for appellees.

GALLAGHER, C. J. This is an appeal by L. D. Ormsby and William G. Bell from a judgment against them in favor of R. E. Ratcliff for the sum of $2,556.22. Said judgment provided that all sums collected thereunder should be paid to the intervener, H. A. Jandrow, receiver of the business and assets of said Ratcliff, trading under the name and style of Ratcliff Rubber Company. The parties will be designated as in the trial court.

The plaintiff, Ratcliff, set out a contract between the Republic Rubber Company of Texas, a corporation, and defendants Ormsby and Bell, dated December 31, 1919, by the terms of which said company agreed to ship said defendants on consignment certain automobile tires, and tubes, with the understanding and agreement that all consigned stock so shipped should remain its property until fully paid for, and for which defendants would be responsible and which they agreed to return on demand or pay for at latest invoice prices. According to further terms of such contract, defendants were required to report weekly all tires and tubes sold out of said consigned stock, and the company was to charge them therewith, and defendants were to pay therefor with trade acceptances on the 10th day of the month following such charge. According to further terms of said contract, the proceeds of the sale of consigned stock to the amount charged or to be charged against defendants therefor were to remain the property of the company and to constitute a trust fund and be kept separate from defendants' other funds. All accounts and bills receivable arising out of the sale of consigned stock were to be the property of said company. According to further terms of said contract, defendants, for the purpose of better securing all sums due by them to the company thereunder, transferred and assigned to it all their personal property used in connection with their business, and all moneys owing to them in such connection. Said contract contained further provisions authorizing the company, in certain contingencies, to cancel the same and declare all sums due thereunder immediately due and payable, and to retake possession of said consigned stock without legal process. According to further provisions of said contract, defendants' purchases thereunder were to amount to not less than 250 tires and 350 tubes per month, and, in such event and in the further event that prompt payment therefor was made as provided, such contract should continue as long as mutually satisfactory to both parties. Said contract contained a further provision that defendants were not to be permitted to return said consigned stock without the written consent of the company, and, if returned without such consent, such stock might be sold at public

or private sale and the proceeds applied to the satisfaction of defendant's indebtedness to it. Other provisions of said contract will be recited in connection with the issues of law discussed in the opinion.

Plaintiff alleged that the company, during the latter part of October, 1920, notified defendants that it had decided to cancel said contract and that such cancellation would become effective December 31st of that year; that on or about said last-named date an inventory was taken and an audit made of all transactions between said company and defendants, and that, after allowing to them all just and lawful offsets, it was found that they were justly indebted to said company in the sum of $2,556.22; that they had failed and refused to pay the same and had converted said money to their own use. Plaintiff further alleged that said account had been by said company, for a valuable consideration, transferred and assigned in writing to him, and prayed for judgment for the amount of his debt in the sum aforesaid, with interest from January 1, 1922, and for general relief. The pleadings of the parties, so far as necessary to an understanding of the issues discussed in the opinion, will be recited therein.

The case was submitted to a jury on special issues, which issues, with the answers of the jury thereto, are as follows:

"(1) From a preponderance of the evidence, what amount of money, if any, do you find and believe is due by the defendants to the plaintiffs herein; answer in dollars and cents." Answer: "$2,556.22."

"(2) Do you find from a preponderance of the evidence that the consideration for the account sued on wholly failed by reason of defective tires furnished by the Republic Rubber Company of Texas to the defendants?" Answer: "No."

"(3) Do you find from a preponderance of the evidence that the consideration for the account sued on has failed in part by reason of defective tires furnished by the Republic Rubber Company of Texas?" Answer: "No."

The court rendered judgment on the verdict in favor of the plaintiff against the defendants, jointly and severally, for the sum so found by the jury to be due, with legal interest thereon from January 1, 1922.

### Opinion.

 Defendants contend that the plaintiff's suit as alleged in his pleadings was based solely on a claim for conversion of money belonging to his assignor, Republic Rubber Company of Texas, and that the undisputed testimony showed that any amount due by defendants was for goods sold outright to them by said company under a verbal contract. Based on such contention, they submit as ground for reversal the refusal of the court to instruct the jury at their request to return a verdict in their favor. Plaintiff's testimony showed that tires and tubes had been

shipped by the company to defendants from time to time, as provided by said contract, and that defendants had from time to time made payments on account of sales made by them from the goods so shipped; that about the middle of the year 1920 various companies dealing in tires and tubes found themselves overstocked, on account of intensive production during and immediately following the war, and that they desired to convert such surplus stocks into money; that, not desiring to reduce prices generally, they authorized the sale of regular stock at reduced prices, representing the tires and tubes so offered for sale as "not first class," which designation was indicated by the letters "NFC"; that said tires and tubes so designated were not in fact defective; that he, as the representative of the Republic Rubber Company of Texas, explained the situation to defendants, and that they undertook to handle such "NFC" tires and tubes; that under his agreement with them all such tires and tubes shipped to them were not consigned to them for sale for account of such company, but sold to them outright, and that they were at liberty to do what they pleased with them; that most, if not all, the charges sued on were for "NFC" tires and tubes purchased by defendants under such agreement. In determining whether an issue submitted or judgment rendered is supported by the pleadings, the court will consider the pleadings of both parties, and omissions in the pleadings of one party may be supplied by allegations in the pleadings of the other. Ray v. Burrington (Tex. Civ. App.) 297 S. W. 781, 783, and authorities there cited. Defendants pleaded that said contract between them and plaintiff's assignor, while purporting to be for shipping of goods to them on consignment, when properly construed was in fact a contract for the sale to them of all the tires and tubes so shipped, and in that connection further pleaded "that in truth and in fact, the manner in which the Republic Rubber Company and these defendants did business under said contract amounted to a sale of the goods to them, and not a consignment." In view of such allegations by defendants, we do not find it necessary to determine whether the pleadings of plaintiff, standing alone, were sufficient to authorize the submission of the case to the jury under the evidence. We think plaintiff's pleadings, when considered in connection with said allegations of defendants and as aided thereby, were ample to raise an issue of the sale to defendants of the goods sued for, and to support the submission of the case to the jury under the evidence introduced. It follows that the court did not err in refusing to instruct a verdict for defendants. All of defendants' propositions based on such complaint of plaintiff's pleadings are overruled.

Defendants, in connection with their contention that the contract declared on by plaintiff, when properly construed, was in fact a contract for the sale to them of all the tires and tubes so shipped them, further contend that such contract was inhibited by the provisions of articles 7426–7429, inclusive, of our Revised Statutes, commonly referred to as our anti-trust statutes. Based on such contention, they submit as ground for reversal the action of the court in overruling their general demurrer and their first special exception, which exception challenged the sufficiency of the plaintiff's petition on the ground that the same showed on its face that the contract under consideration limited the territory in which defendants might sell the goods shipped them thereunder, and thereby showed that the same violated said statutes and was therefore void and unenforceable. Said contract contained the following provision:

"In consideration of your performance of the foregoing we agree to give you the sale of our automobile tires and tubes in that part of the State of Texas lying and being between the ninety-seventh and the one hundred and fourth meridian and south of the thirtieth parallel, Texas, for the trade with the consumers and dealers, and we will refer to you all such parties sending inquiries or orders to us from the aforesaid territory; we reserve the right to sell our tires and tubes direct to manufacturers of motor cars in such territory free from commissions on any such sales, or sell direct to anybody whomsoever, but will give you credit for any such sales to any person other than manufacturers of motor cars the same as if made by you."

Defendants tacitly concede that, if such contract was one of consignment or agency, the statute was not violated thereby. Welch v. Phelps & Bigelow Wind Mill Co., 89 Tex. 653, 655, 656, 36 S. W. 71. Said contract contained in the main all the distinguishing characteristics of consignment, which are in brief; that it expressly purported to be such; that all goods shipped were to remain the property of the company and could be retaken by it at any time; and that the proceeds of sales were to be and remain its property and to be held by defendants in trust, separate and apart from their own funds or assets. The company also expressly agreed therein to prepay or allow freight to Texas common points on all shipments aggregating 100 pounds or over. The company therein also guaranteed the goods shipped thereunder to be free from imperfect material and workmanship, and provided for replacement by it of all goods found defective, and prescribed the procedure for such adjustment and replacement. Said contract further provided for weekly reports from defendants of all sales made by them out of the consigned stock, and only upon such report of sales were they to be charged with the agreed price of the goods so sold. The fact that said contract provided that defendants should be

charged with| the agreed price for all goods sold, thus in legal effect guaranteeing the collection of all credit sales, was not inconsistent with plaintiff's contention that shipments made thereunder were consignments and not purchases. Milburn Mfg. Co. v. Peak, 89 Tex. 209, 211, 34 S. W. 102. The principal provisions relied on by defendants,' in support of their contention that said contract was one of sale and not consignment, are that defendants were to be charged with the agreed price for all goods| sold by them and were to pay therefor, less certain stipulated discounts, by giving trade acceptances on the 10th day of each month, that their purchases were to average a certain number of tires and tubes each month, and that they were not permitted to return stock on hand without the consent of the company. .We do not think said contract could be said to show on its face as a matter of law that shipments made thereunder constituted sales ab initio. If the provisions relied on by defendants render it ambiguous, its proper construction became a mixed question of law and fact, to be determined in the light of the situation at the time, the circumstances attending its execution, the construction given it by the declarations and acts of the parties thereunder before any controversy arose, and any other competent testimony on such issue which the parties might see fit to introduce. Such being the case, the demurrers were properly overruled. Alstin's Executor v. Cundiff, 52 Tex. 453, 461; Nalle v. McKnight (Tex. Civ. App.) 126 S. W. 902, 903; Arlington Heights Realty Co. v. Citiens' Railway & Light Co. (Tex. Civ. App.) 160 S. W. 1109, 1121, par. 20; Lamm & Co. v. Brannon (Tex. Civ. App.) 244 S. W. 256, 259, par. 5; Dallas Oil & Refining Co. v. Washington Cotton Oil Co. (Tex. Civ. App.) 283 S. W. 345, 346, par. 2; Kent v. Ryan (Tex. Civ. App.) 20 S.W.(2d) 1099, and other authorities therein cited. This holding renders unnecessary a determination of defendants' contention that the language above quoted showed on its face an agreement in violation of said statutes.

■ Defendants complain of the refusal of the trial court to submit at their request the following special issue: "Did the Republic Rubber Company of Youngstown, Ohio, own the account or indebtedness sued on herein?" Defendant's pleadings relied on by them to raise such issue are very vague. There is no specific allegation that the contract under consideration and the claims against defendants arising thereunder had ever been assigned or attempted to be assigned to such foreign corporation. The evidence showed that such contract was in writing and executed by the Republic Rubber Company of Texas on the one part, and defendants on the other. Said contract and all demands of said company thereunder were on August 10, 1921, by a written instrument, duly executed and acknowledged, sold and transferred to the plaintiff. Said contract and the subsequent assignment thereof were introduced in evidence by the plaintiff. He thereby established an apparent legal title to the claim sued upon. There was no evidence attempting to show a prior assignment of said contract and claim to said foreign corporation, or any one else. It is the established rule in this state that one having the possession of a written instrument and the apparent legal title thereto, whether such instrument be negotiable or nonnegotiable, may sue thereon in his own name, and that the party bound thereon cannot resist payment on the ground that such holder is not in fact the owner, but that in equity it belongs to another. Thompson v. Cartwright, 1 Tex. 87, 46 Am. Dec. 95; McMillan v. Croft, 2 Tex. 397, 398; Fowler v. Willis, 4 Tex. 47, 48; Andrews v. Hoxie, 5 Tex. 171, 183; De Cordova v. Atchison, 13 Tex. 372, 373; Wimbish v. Holt, 26 Tex. 674, 675, 676; Rodgers v. Bass, 46 Tex. 505, 519; Allen v. Pannell, 51 Tex. 165, 168; Allison v. Phœnix Insurance Co., 87 Tex. 593, 595, 596, 30 S. W. 547; Lewis v. Womack (Tex. Civ. App.) 33 S. W. 894; Russell v. People's National Bank of Belton (Tex. Civ. App.) 2 S. W.(2d) 961, 962 (writ refused). We think the rule so announced is applicable in this case, and that the court did not err in refusing to submit the requested issue.

■ The Republic Rubber Company of Texas in the contract under consideration guaranteed the goods shipped thereunder to be free from imperfect material and workmanship, and prescribed the method of making adjustments and replacements under such guaranty. Defendants alleged that said company failed and refused to make such adjustments and replacements, and that they were compelled to compensate purchasers of defective tires in cash for their loss by reason of such defects. They sued to recover the sum of $3,500 on account of such expenditures. Defendants requested the court to submit a group of issues inquiring, in substance, whether said company made adjustments in accordance with the provisions of the contract, and, if they did not, whether defendants suffered damage by reason of their failure to do so, and, if so, the amount of such damage.

The testimony disclosed that the major portion of the claim or account sued on was for "NFC" tires, sold as such to defendants outright. There is no evidence that the company assumed any obligation of adjustment or replacement with reference to such tires. There was no evidence of the amount expended in making cash adjustments on consigned tires, as distinguished from "NFC" tires. In fact, the only evidence introduced on the issue of cash expenditures by defendants in making adjustments was the testimony of the defendant Ormsby, as follows: "I do not have any idea how much money I spent when I was adjusting these tires for

508

cash, trying to save the business. I shouldn't think the cash we spent in adjusting tires would run over a couple of thousand dollars." Such evidence afforded no sufficient basis for the recovery of any specific amount on account of money so expended. The court therefore did not err in refusing the request of the defendants for the submission of such special issues.

We have considered all the other propositions submitted by defendants as ground for reversal of the judgment against them, and are of the opinion that none of them justify or require such action.

The judgment of the trial court is affirmed.