## LEMMON v. FURST & THOMAS.

### No. 13294.

Court of Civil Appeals of Texas. Dallas.

Nov. 13, 1942.

Rehearing Denied Dec. 11, 1942.

T. R. Odell, of Haskell, for appellant.

O. H. Woodrow, of Sherman, for appellee.

BOND, Chief Justice.

Furst & Thomas, a copartnership domiciled in the City of Freeport, Illinois, shipped and delivered to T. J. Lemmon, Jr., of Haskell, Texas, certain goods, wares and merchandise under a written contract and security agreement executed by Lemmon, as principal, and the other appellees herein as sureties. This contract and agreement forms the basis of this suit.

It is conceded by all parties that the conclusion turns on the answer to the primary question—does the contract evince an assignment of the goods, title remaining in the consignors; or a sale, title passing to the consignee? If it is an assignment agreement, the rights thereunder are enforceable; otherwise, violative of our statutes, (Art. 7426 et seq., Vernon's Civ.St.) against trusts, monopolies, and conspiracies in restraint of trade, therefore void, hence the security agreement is enforceable. On the other hand, if the title did not pass to the receiver of the articles, viewed from his standpoint rather than that of the sender, there was no sale; hence an assignment, or bailment, not inhibited by law. Charles M. Stieff, Inc., v. City of San Antonio, 130 Tex. 594, 111 S.W.2d 1086.

A consideration of the contract in its entirety, viewed from its four corners rather than from isolated dissected parts, must determine the issue. It might be said that some incidental features of the contract apparently lead to the view that the transaction was an absolute sale, and equally so, an assignment for sale, or perhaps both. If any such ambiguity exists, it should be resolved in favor of the construction that would make it a legal transaction, that is, an assignment, or bailment of the goods, an enforceable contract. It is expressly agreed by all parties to the suit that each and all of the provisions of the written contract were observed, and the agreement contains the following: "That the restraints contained in the contract as to selling the merchandise only in a territory to be assigned to T. J. Lemmon, Jr., and that T. J. Lemmon, Jr. was to have no other business or employment and was to sell only the goods consigned to him, were carried into effect and such restrictions were observed by all parties connected therewith, as were all other provisions of the written contract"; and further, that "Furst & Thomas accepted such contract and, in compliance therewith and at the special instance and request of the defendant, T. J. Lemmon, Jr., shipped and delivered to T. J. Lemmon, Jr., certain goods, wares and merchandise over a period of time, and that the balance due growing out of such transaction, is the sum of $754.65." Accordingly, the written contract is here presented for interpretation; its terms and conditions and relationship of the parties expressed therein are to be determined from the language used. The mere enumeration of the salient features of the contract will suffice here to show the true intendment of the parties. The contract provides: (1) the parties named are denominated (Furst & Thomas) "consignors"; T. J. Lemmon, Jr., "consignee." (2) The consignee wishes to engage in the business of "selling on commission" the products owned and controlled by the consignors. (3) The consignors agree to furnish to the consignee "on consignment," unless prevented by fire, strikes, accidents, or other causes beyond their control, a reasonable quantity of their goods, the amount thereof to be determined by the consignors, and to continue to furnish reasonable quantities of their goods at his request, to keep up his stock of *their merchandise,* so long as the consignee's business is satisfactory to the consignors. (4) The consignors agree to open up a "consignment account" with the consignee for the goods furnished and charge the goods on the account at "current wholesale prices in effect at the time of shipment, the goods to be shipped from their branch warehouse at Memphis, Tennessee." (5) The consignee agrees to accept the goods, "pay all transportation charges, store said goods in a safe, clean and dry place, and at his own expense, to fully protect all stocks carried by him, by fire, tornado, theft and burglary insurance, payable to Furst & Thomas, or, in

absence of such insurance, to account to Furst & Thomas, in cash, for any such loss. *All such goods so consigned are to remain the property of the consignors and title to same shall not pass to the consignee*. (Italics ours.) (6) The consignee agrees to make sales of the goods in territory assigned by the consignor and to have no other business or employment, and to sell only the goods "consigned to him." (7) The consignee agrees to make weekly reports of sale, itemize the retail prices of the goods sold or disposed of by him, retain as a compensation the difference between the wholesale prices and what he receives for the goods above the wholesale prices and remit to the consignors the wholesale consignment prices. "All credit sales shall be upon consignee's responsibility and shall be paid for at wholesale prices when collected, which collection shall be made by the consignee within a reasonable time, and all goods sold on credit are to be accounted for by the consignee in cash within two months from the termination of this agreement." (8) The authority of the consignee is expressly limited to the terms and conditions of the contract, and he shall not make or enter into any other agreement in behalf of the consignors, shall have no authority to contract any indebtedness in the name of, or on behalf of, the consignors, and all facilities for the sale of said goods and all expenses in connection with said sales are to be paid for by the consignee. The contract is to be interpreted as a limited agency for the purposes therein set forth. (9) It is agreed that either party may terminate the agreement, and, upon such termination, the consignee agrees to return to the consignors, properly packed and freight prepaid, all goods in his possession which are in merchantable condition and receive credit therefor at current wholesale prices, and the balance shall be paid for and be due within two months from the date of termination.

It will be observed that the principal thought, independent of some isolated expressions which might reasonably be applied to both assignment for sale and to absolute sale of the consigned goods, leaves and places title thereto in the consignors, with limitations, restraints and conditions suitable to the respective parties. The consignee agreed to receive the goods on assignment, sell them in ac-

cordance with the desire of the consignors, protect the consignors' title to the property and report periodically the sales and amount of their property on hand. The obligee binds himself to return all unsold goods, or account for their loss at the termination of the agreement, and pay all damages thereto. Such conditions, limitations and restrictions are indeed applicable to an assignment for sale; if so, the contract cannot be the basis to avoid payment of the account arising thereunder, as being violative of the statute. The whole thought of the contract is an assignment. It expressly states: "All such goods so consigned are to remain the property of the consignors and title to same shall not pass to the consignee." Measured by the only criterion as to whether the title to the goods sent by the consignors to the consignee passed to the receiver, the reservation of title in shipper forecloses the thought that the goods sent was an absolute sale. It was entirely within the discretion of the contracting parties to make the terms and conditions within the law, and under such limitations as they deem proper for the conduct of their own business. They did so; hence it is not within the province of the courts to say, or extend a theory inconsistent with their contract, when the thought revealed throughout is reasonable that the sale was on assignment.

The judgment of the court below is affirmed.