**J. C. BARR et al., Appellants,**

v.

**SOUTHWEST WHOLESALE FURNITURE & APPLIANCE COMPANY,**
Appellee.

No. 16055.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 8, 1960.

Rehearing Denied Feb. 5, 1960.

**344**

Lattimore & Lattimore and Hal M. Lattimore, Fort Worth, for appellants.

Garrett & Garrett and Rufus Garrett, Jr., Fort Worth, for appellee.

RENFRO, Justice.

In the trial court defendant was awarded judgment for $13,034.53 on a cross-action, and plaintiffs were awarded $3,600 against defendant for loss of profits on a business transaction wrongly diverted from plaintiffs.

In 1954 Stockton Appliance & Furniture Co., a partnership composed of Stockton, Botts and Barr, entered into a written contract with Southwest Wholesale Furniture & Appliance Co., Inc., whereby the partnership, hereinafter called plaintiffs, would purchase furniture on consignment from the Wholesale Company, hereinafter called defendant.

The contract provided: " * * * Immediately upon sale of any item of furniture, Partners agree to remit to Company in cash the amount of the wholesale price of the item sold. Wholesale price to be paid shall be that price prevailing on date of order of the item by Partners." After doing continuous and considerable business with defendant for approximately a year and a half, plaintiffs Botts and Barr (Stockton having severed connection with the partnership) brought suit against defendant for alleged overcharges on consigned furniture sold by plaintiffs.

Defendant filed cross-action against plaintiffs for an amount in excess of $13,-000.

In their petition plaintiffs alleged that prior to the execution of the contract it was agreed by the parties that plaintiffs would pay defendant a sum equal to defendant's invoice price paid by it to jobbers or manufacturers for the particular merchandise sold by the plaintiffs plus 20 per cent thereof. The court sustained special exceptions to the above pleading, on the ground it was an attempt to vary the terms of a written agreement.

It is plaintiffs' position that "wholesale price to be paid shall be that price prevailing on date of order of the item by partners" is ambiguous and uncertain and that the trial court erred in sustaining exceptions to their pleading. In our opinion plaintiffs' position is not well taken. If a contract on its face is capable of being given a definite legal meaning, parol evidence is not competent to render it ambiguous. Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977; Patton v. Crews, Tex.Civ.App., 264 S.W. 2d 467. Wholesale price is the price fixed on merchandise by one who buys in large quantities of the producers or manufacturers and who sells the same to jobbers or retail dealers. Words & Phrases, Wholesale Price, Vol. 45, p. 113. The first three points of error are overruled.

Plaintiffs plead in the alternative that the president of defendant Company, during negotiations leading up to the execution of the contract, represented to plaintiffs that defendant would price merchandise to the plaintiffs for a sum equal to the defendant's invoice cost, plus 20 per cent; that after the written contract was prepared the same official told plaintiffs the phraseology of the contract did not abrogate their understanding as to the actual price

to be charged, but was placed in the agreement so that other retail customers of defendant would not know that plaintiffs were given a better price.

In addition to the above, all other elements necessary to establish fraud were amply pleaded.

At the conclusion of the evidence the court sustained defendant's special exceptions to plaintiffs' pleadings regarding fraud, and in its judgment recited: "* * * the Court finds, determines and decrees as a matter of fact and of law, that the allegations * * * are not sustained by the proof, and that by reason of plaintiffs' failure to prove fraud upon the part or on behalf of the defendant * * * in the inducement of the plaintiffs to sign the written contract * * *, said agreement was, on May 15, 1956, when this suit was filed, a valid, existent and enforceable contract, and the said allegations in subdivision or paragraph V of the plaintiffs' said petition should be and the same are hereby stricken, and the evidence introduced on said issue raised by said pleading should be and the same is hereby excluded * * *." Plaintiffs' points 4 and 5 claim error on the part of the court in sustaining defendant's exceptions to the pleadings and in holding the evidence insufficient to support a finding of fraud.

Plaintiffs' evidence showed that defendant's president knew that plaintiffs were inexperienced in the furniture business. Plaintiffs testified that the president told them during negotiations and at the time of the execution of the contract that the price to be charged plaintiffs would be defendant's invoice price plus ` 20 per cent. They testified that at the time the contract was executed defendant's president told them he inserted the term "prevailing wholesale price" in the contract so other dealers would not know plaintiffs were obtaining a better price; that plaintiffs relied on the representations and would not have signed the contract except for such

representations having been made. Defendant's president denied he made the statement that defendant's cost to plaintiffs would be invoice cost plus 20 per cent; he testified: "20% on gross. That's what I meant, and that's exactly what I am saying again."

The evidence shows that if plaintiffs had been charged invoice cost plus 20 per cent the amount to be paid defendant would have been several thousand dollars less than the amount actually charged on the basis of gross cost plus 20 per cent.

The Supreme Court in Dallas Farm Machinery Company v. Reaves, Tex., 307 S. W.2d 233, held that parol evidence is admissible, in the face of a "merger" clause in a written contract, to establish that the contract was induced by fraud.

■ It is difficult to summarize and analyze 884 pages of testimony and an impressive volume of exhibits in an opinion of reasonable length. We have, however, studied the entire record and reached the conclusion that the evidence mentioned above, together with all the other evidence in the record, raised fact questions as to the alleged fraudulent representations, and that the court erred in taking the case, as to fraud, from the jury and holding as a matter of law that the evidence was insufficient to support jury findings establishing fraud.

■ Since we must view the evidence in the light most favorable to plaintiffs, the court having struck plaintiffs' allegations of fraud from the petition and withdrawn the evidence thereon, we are not now concerned with the question as to whether favorable answers to the plaintiffs would have been so overwhelming against the preponderance of the evidence as to manifest an injustice and we do not pass on that question. We do hold that there was some evidence of probative value to support plaintiffs' allegations and they should have been submitted to the jury.

It is only when there is no evidence or only a scintilla of evidence of probative force that a trial court is justified in instructing a verdict.

By counter-point defendant contends plaintiffs waived any damages occasioned by the purported fraud. It is undisputed the parties did some business with each other before the plaintiffs discovered the alleged fraud. The question of waiver can be submitted to the jury by special issues and proper instructions.

In an attempt to defeat defendant's cross-action, plaintiffs plead the arrangement between the parties was in violation of the antitrust law. The contract in question was one of consignment rather than a present sale. It was not such contract as falls within the purview of the antitrust law. McDaniels v. Schmalstieg, Tex.Civ.App., 36 S.W.2d 278; Lemmon v. Furst & Thomas, Tex.Civ.App., 166 S.W. 2d 755; Welch v. Phelps & Bigelow Windmill Co., 89 Tex. 653, 36 S.W. 71.

Plaintiffs contend there was no evidence to sustain the amount of defendant's cross-action, and defendant counters that plaintiffs failed to prove damages arising from the purported fraud. We overrule the contentions of each. We agree with the trial court that the evidence was undisputed as to the amount plaintiffs owed defendant, if it prevailed, and we hold there was evidence of some damages sustained by plaintiffs in the event they had finally prevailed.

All plaintiffs' points of error, except 4 and 5, are overruled.

In view of the state of the record and the nature of the case, we think the ends of justice will be best served by reversing the entire judgment and remanding the case for a new trial, and it is so ordered.

Reversed and remanded.