**R. L. STEWART, Appellant,**

**v.**

**H. L. DAVIS, Jr., Appellee.**

**No. 14598.**

Court of Civil Appeals of Texas.

San Antonio.

June 7, 1967.

Rehearing Denied July 12, 1967.

Simpson, Hancock & Green, Roland J. Bellard, Texas City, for appellant.

P. Otis Hibler, Harry J. Burns, San Antonio, for appellee.

BARROW, Chief Justice.

This is an appeal from a take-nothing judgment granted defendant in a suit for breach of contract. Appellant, a licensed insurance agent, brought this suit to recover damages from appellee, d/b/a H. L. Davis & Son, for breach of an exclusive contract authorizing appellant to submit a bid to Galveston County to write insurance coverage on the Galveston County Hospital through the Commerce & Industry Insurance Company of New York. Davis is the general agent for the State of Texas for this Company, hereinafter referred to as C & I. The trial court concluded from depositions before it, that the exclusive contract given Stewart by Davis was in violation of Art. 7426, §§ 1, 3 and 5, Vernon's Ann.Civ.St.[1] and was therefore void and unenforceable.

Stewart was a local recording agent of Davis, as were five or six other local agencies in the Galveston area. Insurance Code, Art. 21.09 and Art. 21.14, §§ 1 and 2, V.A.T.S. Among other companies written

1. The relevant provisions of Art. 7426, Vernon's Ann.Civ.St., are:

"A 'trust' is a combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons, or either two or more of them for either, any or all of the following purposes:

1. To create, * * * or carry out restrictions * * * in the free pursuit of any business authorized or permitted by laws of this State.

2. To fix, maintain, increase or reduce * * * the cost of insurance, * * *.

3. To prevent or lessen competition in * * * the business of insurance, * * *.

4. To fix or maintain any standard or figure whereby the * * * cost of * * * insurance, * * * shall be in any manner affected, * * *.

5. * * * to preclude a free and unrestricted competition among themselves or others in the * * * business of * * * insurance, * * *."

through the Davis general agency was C & I. The evidence establishes that although a uniform basic rate is set by the State Insurance Commission for a stated risk, various companies are permitted to deviate from such basic rate in certain percentages as determined by the Commission. In the fall of 1963, C & I enjoyed the distinct advantage of being the only stock company given a 25% deviation rate from the basic premium.

At this time the building and contents of the Galveston County Hospital were insured with a policy written by another insurance company through an association of Galveston insurance agents. A new hospital wing was under construction and it was recognized that a new policy would be required. Stewart determined that if he could obtain from Davis the exclusive right to bid for coverage of the hospital through C & I and persuade the Galveston Commissioners' Court to let the insurance by competitive bids, he could secure the insurance. Stewart testified that counties are required to insure through stock companies. After several discussions, Davis wrote Stewart on January 1, 1964, naming him the exclusive agent for the writing of this coverage through C & I. Stewart then devoted considerable time with the members of the Commissioners' Court and finally persuaded them to place this insurance by competitive bids. Stewart furnished the plans and specifications to Mr. Connolly, a special agent for Davis, and Mr. Connolly secured the basic premium rate for this risk from the State Insurance Commission.

These facts became known to other Galveston agents and considerable pressure was exerted on Davis to get him to withdraw the exclusive authority given Stewart. C & I officers complained to Davis that all local agents authorized to write their policies should be given an equal opportunity to bid. The other local agents for Davis in the Galveston area complained of this preferred treatment of Stewart. Davis yielded to this pressure and on February 19, 1964,

he wrote Stewart to confirm an earlier telephone conversation advising Stewart that the exclusive arrangement was cancelled. Mr. Connolly furnished the premium rate to other Davis agents, who submitted identical bids with Stewart to insure the hospital through C & I at a deviation rate of 25%. The Commissioners' Court awarded the bid to Mr. Smith, a local agent of Davis, who had submitted a bid in his name on behalf of an association of Galveston agents, and the commission of 15% was divided among 13 or 14 members of this association. Stewart was not a member and did not share in this commission.

The question before this Court is whether an exclusive contract between a general agent and his local recording agent falls within the provisions of the Anti-Trust Statutes. The rule established in Welch v. Phelps & Bigelow Windmill Co., 89 Tex. 653, 36 S.W. 71 (1896), is that a trust is not created by an agreement growing out of the relationship of principal and agent where the agent is acting in furtherance of the principal's business, since there is no "combination of capital, skill, or acts by two or more persons, [firms, corporations or associations of persons]." See also, Padgitt, v. Lone Star Gas Co., Tex.Civ.App., 213 S.W.2d 133, no writ; Cunningham v. Frito Co., Tex.Civ.App., 198 S.W.2d 772, no writ; McDaniels v. Schmalstieg, Tex.Civ.App., 36 S.W.2d 278, writ dism'd; 38 Tex.Jur.2d, Monopolies, Combinations, etc., § 15.

■ Appellee urges that the relationship between Stewart and Davis is not the typical agency situation involving only the internal control of a principal and agent. The agency contract is not in the record, so we must presume same is as provided by the Insurance Code. See Insurance Code, Art. 21.14 § 2, Vernon's Ann.Civ.St.; Shaller v. Commercial Standard Ins. Co., 158 Tex. 143, 309 S.W.2d 59 (1958). We have not found any case discussing the application of this type of relationship to the Anti-Trust laws. How-

ever, it has been held that the general principles of the law of agency apply in the relationship between an insurance company and its agents. Adams v. LaSalle Life Ins. Co., 99 S.W.2d 386, writ dism'd. See also Appleman, Insurance Law and Practice, §§ 8672, 8952.

In Potomac Fire Ins. Co. v. State, Tex. Civ.App., 18 S.W.2d 929, writ ref'd, the Court held that a contract *among several insurance companies* to limit the commission of their local agents to 20% violated the Anti-Trust Statutes. In doing so, however, the Court pointed out that the contract in question was not one between a principal and agent to prohibit or limit the agent's dealings, or incident to the agent's employment, but rather was a combination and agreement between two insurance corporations. The Court, therefore, held, at least by implication, that a contract between a company and its own agents would not have been in violation of the Anti-Trust Statutes.

Appellee cites Southern Health Ass'n v. Harris Memorial Methodist Hospital, Tex. Civ.App., 180 S.W.2d 169, writ ref'd w. o. m., wherein a contract between an insurance company and a hospital was held to violate the Anti-Trust laws of Texas. There is no discussion of the agency question and we do not consider this case in point on the question before us.

We can see no valid distinction in the relationship of a general agent to one of his local recording agents than any other principal-agent relationship, insofar as the application of the Anti-Trust laws are concerned. We therefore conclude that the trial court erred in holding from the record before it that the exclusive contract granted Stewart by Davis was in violation of the Anti-Trust laws and was therefore void and unenforceable.

The judgment of the trial court is reversed and the cause remanded for trial on the merits.