Robert J. LLEWELLYN, Appellant,

v.

S. R. BORIN, Appellee.

No. 8582.

Court of Civil Appeals of Texas, Texarkana.

July 25, 1978.

Horace G. Goodrich, Dallas, for appellant.

Paul L. Smith, David W. Townend, Gardere, Porter & DeHay, Dallas, for appellee.

CORNELIUS, Chief Justice.

Robert Llewellyn appeals from a take nothing judgment rendered against him in his breach of contract suit against S. R. Borin.

Llewellyn was the owner of a business known as TV Host Magazine of Tarrant County. The sole asset of the business was a "Distributorship Agreement" executed between Llewellyn and the publisher of *TV Host Magazine*, Omni Industries, Inc., of Dallas, Texas. On August 10, 1973, Llewellyn sold his rights under the distributorship agreement to Borin. The contract of sale obligated Borin to pay Llewellyn $5,000.00 down and an additional $15,000.00 in installments. He made the down payment and several installments, reducing the amount owing on the contract to $9,375.00, but then ceased payments. Llewellyn thereupon brought suit to recover the balance due, plus interest and attorney's fees. Borin defended on the ground, among others, that the distributorship agreement was void because it was in violation of the Texas Anti-Trust Statutes. He contended that, as the agreement was the only consideration for the contract of sale and it was void and unenforceable, there was a failure of consideration and his obligations under the contract could not be enforced. The case was tried to the court on a stipulation of facts. The stipulation provided that if the distributorship agreement was in violation of the anti-trust statutes Llewellyn could not recover; otherwise, he was entitled to recover the sum of $9,375.00 plus interest and 10% attorney's fees. The district court ruled that the distributorship agreement did contravene the anti-trust statutes, and rendered judgment accordingly.

The distributorship agreement provided in part as follows:

"IN CONSIDERATION of the mutual promises of the parties herein contained, and for other good and valuable consideration, the Publisher and the Distributor do hereby agree upon the following terms and conditions to govern the manufacture, purchase and sale of the 'TV HOST' publication, hereinafter referred to as the 'Publication'.

1. The Publisher agrees to produce in a good and workmanlike manner the Publication, and to ship the same for the account of the Distributor as herein provided. . . . Distributor agrees to purchase not less than 5,000 copies per week of the Publication . . . and to pay the Publisher in accordance with the rate schedule . . .

2. Distributor agrees to furnish all information or materials reasonably required by Publisher in order to insure timely completion of the Publication.

 . . .

3. Publisher shall insert advertising copy sent in by Distributor on pages made available by the Publisher for advertising, in accordance with Distributor's instructions . . .

 . . . . .

5. Distributor will use his best efforts to sell advertising in the following 'Designated Area': Tarrant County, Texas. Publisher agrees not to establish any other distributors within the Designated Area during the period of this Agreement.

 Receipts from advertising revenues shall be distributed as follows:

 (a) Distributor shall receive all the gross revenues derived from his sales of local advertising in the Publication published for Distributor's Designated Area. . . . Publisher shall receive an amount equal to ten percent (10%) of advertising space based on Distributor's prevailing rate schedule, . . .

 (b) When advertising is sold by the Publisher or another distributor, Distributor shall receive forty percent (40%) of the gross revenue received by Publisher from advertising in the Publication published for Distributor's Designated Area.

 (c) Distributor shall be entitled to receive forty percent (40%) of the gross revenue derived from his sales of advertising in Publications published for designated areas other than that of Distributor. . . .

6. Distributor shall submit to Publisher an advertising rate schedule . . . Distributor agrees to be bound by his prevailing rate schedule on advertising sold by other distributors.

 . . . . .

9. Publisher shall hold a two-day advertising sales and editorial seminar in Dallas, Texas, for the purpose of training and educating the Distributor in general editorial practices and advertising sales. . . .

 . . . . .

12. . . . It is agreed that Publisher may distribute the Publication and take all acts necessary during any default of Distributor to insure its timely distribution. . . .

 . . . . .

15. It is understood and agreed that this Agreement does not create the relationship of agency or joint venture. It is further understood that Distributor has no authority to act or purport to act for Publisher for any purpose whatsoever.

16. Distributor agrees that he will not engage in a similar business or one competitive to Publisher within the Designated Area during the term of this Agreement or within two (2) years after termination of this Agreement.

 . . . ''

Apparently the district court concluded that the agreement violated the anti-trust statutes in that it granted an exclusive sales territory and contained an illegal noncompetition covenant on the part of the distributor.

Tex.Bus. & Comm.Code Ann. Secs. 15.02, 15.03 and 15.04 [1] provide in part as follows:

''§ 15.02. . . .

. . . . .

(b) A 'trust' is a combination of capital, skill, or acts by two or more persons to

---

1. Formerly Articles 7426, 7428, 7429, 7437.

(1) restrict, or tend to restrict, trade, commerce, aids to commerce, the preparation of tangible personal property for market or transportation, or the free pursuit of a lawful business; . . ."

"§ 15.03. . . .

(a) It is a conspiracy in restraint of trade for

(1) two or more persons engaged in buying or selling tangible personal property to agree not to buy from or sell to another person tangible personal property;

. . ."

"§ 15.04. . . .

(a) Every monopoly, trust, and conspiracy in restraint of trade, as defined in Sections 15.01, 15.02, and 15.03 of this code, respectively, is illegal and prohibited. . . .

(b) An agreement violating the prohibition against a monopoly, trust, or conspiracy in restraint of trade contained in Subsection (a) of this section is void and unenforceable in law or equity."

▪ We cannot agree that the agreement in question here violates our antitrust statutes. The type of agreement condemned by those statutes is that whereby one party sells products to another party and they agree to prohibit or restrict the purchase or resale of those products by or to other parties, or limit such sales to a territory which tends to restrict trade and commerce. *Sherrard v. After Hours, Inc.*, 464 S.W.2d 87 (Tex.1971); *Climatic Air Distributors of South Texas v. Climatic Air Sales, Inc.*, 162 Tex. 237, 345 S.W.2d 702 (1961); *Ford Motor Co. v. State*, 142 Tex. 5, 175 S.W.2d 230 (1943); *Grand Prize Distributing Co. v. Gulf Brewing Co.*, 267 S.W.2d 906 (Tex.Civ.App. San Antonio 1954, writ ref'd); *National Automatic Mach. Co. v. Smith*, 32 S.W.2d 678 (Tex.Civ.App. Austin 1930, no writ). The statutes do not apply to arrangements where one party merely represents another party for the purpose of selling his products, or where goods are delivered under circumstances where title does not pass, as in a consignment. *McDaniels v. Schmalstieg*, 36 S.W.2d 278 (Tex.Civ. App. San Antonio 1931, writ dism'd); *Ormsby v. Ratcliff*, 22 S.W.2d 504 (Tex.Civ.App. Waco 1929), *affm'd*, 36 S.W.2d 1005 (Tex. Com.App.1931, jdgmt adopted); *McConnon & Co. v. Ralston*, 275 S.W. 165 (Tex.Civ. App. Texarkana 1925, no writ); *Brenard Mfg. Co. v. Crowley Mercantile Co.*, 260 S.W. 246 (Tex.Civ.App. San Antonio 1924, no writ); *McConnon & Co. v. Powell*, 248 S.W. 428 (Tex.Civ.App. Texarkana 1923, no writ); *Barr v. Southwest Wholesale Furniture & Appliance Co.*, 331 S.W.2d 343 (Tex. Civ.App. Fort Worth 1960, no writ); *Lemmon v. Furst & Thomas*, 166 S.W.2d 755 (Tex.Civ.App. Dallas 1942, writ ref'd w. o. m.); 38 Tex.Jur.2d, Monopolies, Combinations, Etc., Sec. 15, p. 791; Sec. 16, p. 793. The reasons for the distinctions are easily understood. An individual acting alone, either personally or through a representative, may sell his product or services wherever and to whomever he pleases, and there is no violation of the anti-trust statutes. *Cunningham v. Frito Co.*, 198 S.W.2d 772 (Tex. Civ.App. San Antonio 1946, no writ); *LaFon v. Falls Rubber Co.*, 242 S.W. 346 (Tex. Civ.App. Austin 1922), *rev'd on other grounds*, 256 S.W. 577 (Tex.Civ.App.1923, judgmt adopted); 38 Tex.Jur.2d, Monopolies, Combinations, Etc., Sec. 16, p. 794. It is only where there is an arrangement between two or more *principals*, involving absolute sales between them, to prohibit or restrict other sales of the same product, that an illegal conspiracy in restraint of trade is accomplished. *Welch v. Phelps & Bigelow Windmill Co.*, 89 Tex. 653, 36 S.W. 71 (1896); *Padgitt v. Lone Star Gas Co.*, 213 S.W.2d 133 (Tex.Civ.App. Dallas 1948, no writ); *Cunningham v. Frito Co.*, supra.

▪ A careful review of the agreement here reveals that it is not one for the sale and resale of magazines, but is rather an agreement whereby the distributor sells advertising for the publisher for inclusion in

the publisher's magazine. The distributor receives a portion of the advertising charges as his commission. The advertising which he sells is placed in the magazine by the publisher. The distributor then purchases a quantity of the magazines which he distributes free to motels and hotels in order that the advertisements may have maximum exposure to the traveling public. Although the agreement contemplates a sale of certain of the magazines to the distributor, they are not for resale. They are sold to him as materials for his use in stimulating his sales of advertising for the publisher. Furthermore, there is no prohibition or restriction upon his right to dispose of the magazines as he sees fit. The agreement in question is, in reality, nothing more than a representative arrangement for the sale of advertising by the publisher through the efforts of the so-called distributor.

 Neither does the agreement grant the distributor an exclusive territory or restrict his right to sell advertising anywhere he pleases, although such an arrangement would not be illegal if the agreement is considered a representative or agency contract. *Stewart v. Davis*, 417 S.W.2d 595 (Tex.Civ.App. San Antonio 1967, writ ref'd n. r. e.); *Cunningham v. Frito Co.*, supra; 38 Tex.Jur.2d, Monopolies, Combinations, Etc., Sec. 16, p. 793; 58 C.J.S. Monopolies Sec. 85, p. 1101. The agreement, in paragraphs 5(b) and (c), specifically recognizes the right of the publisher's distributors in other areas to sell advertising in Llewellyn's territory, as well as the right of the publisher to sell directly to advertisers in Llewellyn's territory, and the right of Llewellyn to sell in areas other than his designated area. It does provide that Llewellyn's "designated area" shall be Tarrant County, Texas, and that the publisher agrees not to establish any other distributors within the designated area during the existence of the contract. But that is not an illegal restraint of trade, particularly when the representative's territory is nei-

ther exclusive nor restricted as to his sales. A manufacturer or producer may choose to have only one sales representative in a given territory if it desires.

 Nor does the noncompetition covenant render the agreement illegal. Such agreements, if ancillary to an employment or agency contract, are valid unless they are unreasonable as to territory or duration. *Weatherford Oil Tool Company v. Campbell*, 161 Tex. 310, 340 S.W.2d 950 (1960); *Houston Credit Sales Co. v. English*, 139 S.W.2d 163 (Tex.Civ.App. Waco 1940, no writ); Restatement of Contracts Sec. 516 (1932); 13 Tex.Jur.2d, Contracts, Sec. 189, p. 398; 54 Am.Jur.2d, Monopolies, Etc., Sec. 543, p. 982. In the state of the record here, we cannot say that the restriction imposed upon Llewellyn is not reasonable and necessary for the protection of the publisher's good will and business. See for example *Vaughan v. Kizer*, 400 S.W.2d 586 (Tex.Civ. App. Waco 1966, writ ref'd n. r. e.); *Houston Credit Sales Co. v. English*, supra; *Mansfield v. B & W Gas, Inc.*, 222 Ga. 259, 149 S.E.2d 482 (1966); *Lakeside Oil Co. v. Slutsky*, 8 Wis.2d 157, 98 N.W.2d 415 (1959); 54 Am.Jur.2d, Monopolies, Etc., Sec. 557, p. 991; Annotations 9 A.L.R. 1456; 20 A.L.R 861; 29 A.L.R. 1331; 52 A.L.R. 1362; 67 A.L.R. 1002; 98 A.L.R. 963.

 We recognize that the agreement in question provides that it does not create the relation of principal and agent between the publisher and the distributor, but we think it is clear that such provision refers to the relation of principal and agent as contemplated by the doctrine of respondeat superior, and was intended to protect the publisher from liability, under that doctrine, for the acts of the distributor. One can be a representative without being an agent in that sense, and regardless of what the instrument provides, it obviously creates a representative arrangement in which the distributor does not resell *products purchased from the publisher*, but rather sells advertising *for the publisher* to be included in its magazine.

It follows that the distributorship agreement between Omni Industries, Inc. and Llewellyn was not void as violative of the anti-trust statutes. Consequently, upon the stipulated facts Llewellyn was entitled to judgment for the unpaid balance of the sales price, together with interest and attorney's fees.

The judgment of the trial court is reversed and judgment is here rendered that Robert J. Llewellyn recover from S. R. Borin the sum of $9,375.00, plus interest thereon at the rate of 10% from August 10, 1975, to August 23, 1977, together with 10% additional thereon as attorney's fees.